## IN RE CHARLES E. DUNN.

### June 17, 1880.

1. Under the Charter of the city of St. Louis, an ordinance empowering a committee of either house of the Municipal Assembly to send for witnesses and to compel the production of books and papers is not unconstitutional, as an assumption of judicial powers.

2. Under the authority given by such charter and ordinance, either house may punish for contempt any witness who refuses to produce books material to a pending inquiry, and properly called for in a *subpœna duces tecum*.

3. A witness cannot justify a disobedience of a *subpœna duces tecum* on the ground that books or papers called for are his private property.

4. A witness who is served with a *subpœna duces tecum* has no right to demand a declaration in the subpœna that the paper demanded is material to the investigation.

5. The requirements of sect. 3645 of the Revised Statutes applies only to parties to the suit, and not to mere witnesses.

6. The constitutional guaranties against unreasonable searches and seizures, and against depriving a citizen of life, liberty, or property, are no protection against punishment for contempt for refusing to obey a *subpœna duces tecum* issued under proper authority.

7. The constitutional provision that the Charter and ordinances of the city of St. Louis shall be in "harmony with, and subject to the Constitution and laws of Missouri," requires a substantial compliance with the laws and policy of the State, and not a minute agreement in every particular.

Application for *habeas corpus*.
*Petitioner remanded.*
George Mills, for the petitioner.
George P. Strong, *contra*.

Lewis, P. J., delivered the opinion of the court.

The petitioner prays to be released, through the writ of *habeas corpus*, from the custody of the jailer of the city of, St. Louis, to which he has been subjected under the following circumstances : —

On April 6, 1880, the House of Delegates of the Municipal Assembly adopted a resolution for the appointment of a committee of three, "whose duty it shall be to make inquiry relating to the manner in which the suit against the Laclede and St. Louis Gas-Light Companies was prosecuted before the Circuit Court, Court of Appeals, and Supreme Court. The committee may send for persons and papers, and employ a reporter at an expense not to exceed $50." On May 20, 1880, a *subpœna duces tecum* was issued under the hand of the speaker of the House of Delegates, directed to the petitioner, commanding him to appear on the same day before the committee above mentioned, and proceeding thus : " then and there to testify and the truth to say in a certain matter in respect to which they may desire to interrogate you ; and bring with you a certain book known as the 'lamp-book,' kept by you while in the employ of Soc. Newman, receiver of the St. Louis Gas-Light Company." This subpœna was duly served on the petitioner, who appeared before the committee, but refused to produce the book called for, alleging as a reason that said book was his private property, and that neither the city of St. Louis nor the House of Delegates, nor any officer thereof, had any legal right or power to compel him to disclose his private memoranda, or to deprive him of his property, without due course of law. Thereupon a warrant was issued by the speaker *pro tem.* of the House of Delegates,

directed to the sergeant-at-arms, and commanding him to arrest the petitioner and bring him before the House to answer for his contempt. This warrant was duly executed, and the petitioner repeated before the House of Delegates his refusal to produce the book demanded. The House thereupon adjudged against the petitioner a fine of $20, with imprisonment in the city jail for a term of three days upon his refusal to pay the fine. The petitioner, having refused to pay the fine, was committed to the custody of the city jailer upon a warrant duly issued for that purpose by order of the House of Delegates. The jailer's return to the writ of *habeas corpus* shows substantially the foregoing causes of the petitioner's detention. To this return the petitioner demurs, as showing no sufficient authority for his imprisonment.

The City Charter (Art. III., sect. 31) provides that " the Assembly, or either house, shall have power to compel the attendance of witnesses and the production of papers relating to any subject under consideration, and in which the interests of the city are involved, and shall have power to call upon any proper officer of the city of St. Louis to execute such process." In pursuance of this Charter provision, an ordinance, approved March 1, 1880, was adopted, in the following terms : —

" Section 1. Whenever either house of the Municipal Assembly of the City of St. Louis shall, by resolution, authorize any of its committees to make investigation of any question or matter on which such house may lawfully take action, and shall empower such committee to send for persons and papers, such committee shall, thereupon, have authority to issue writs of subpœna and *subpœna duces tecum*. Such writs shall be signed by the presiding officer, or, in case of his absence or inability to act, by the acting presiding officer of the house to which the committee belongs, and shall be attested by the secretary or clerk of said house. Every such writ shall be served and return thereof

made by the sergeant-at-arms to the chairman of the committee, in like manner and with like effect as such writs issued from the Circuit Court are served and returned by the sheriff.

" Sect. 2. In case any person named in any such writ, and who was personally served therewith, shall fail to appear before the committee at the time and place named in the writ, the committee shall have authority to issue a writ of attachment against the body of such person, to be signed as writs of subpœna are herein required to be signed, and to be executed and returned to the chairman of the committee by the sergeant-at-arms, in like manner and with like effect as such writs of attachment issued by the Circuit Court are executed and returned by the sheriff. Any person refusing to be arrested, or resisting the sergeant-at-arms in any case provided for by this ordinance, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $5 nor more than $25 for each offence.

" Sect. 3. In case any person appearing before any committee in obedience to a writ of subpœna, or *subpœna duces tecum*, or attachment, shall refuse or fail to answer any question propounded to him by said committee, or shall fail to produce and submit to the examination of the committee any book, record, or paper which he is required to produce by a *subpœna duces tecum*, or shall, in presence of the committee, be guilty of contumacious, threatening, or disorderly language or conduct, the committee shall immediately report the facts to the house to which it belongs. Upon the coming in of such report, the presiding officer, if so directed by the house, shall issue a warrant, signed by himself and directed to the sergeant-at-arms, commanding him to arrest such witness, and have his body before the house at its first meeting held thereafter, to answer for contempt. The sergeant-at-arms shall execute such warrant. On the hearing of the matter, the house, if it shall adjudge

the witness to be in contempt of its authority, may, for the first offence, punish him by fine of not more than $100, or by imprisonment in the city jail of not more than ten days, or by both such fine and imprisonment. For every repetition of contempt by such witness, in the same investigation, he shall be punished in at least double the amount of his first fine or imprisonment, or both. Any person fined under the provisions of this ordinance shall, on default of payment thereof, be forthwith committed to the city jailer for the term of ten days."

The arrest and commitment appear to have been in substantial compliance with these provisions of the Charter and the ordinance. It remains only to be seen whether they were also sanctioned by a law higher than either of these authorities.

In our form of government, the legislative, executive, and judicial departments are carefully separated from each other, and constitutional provisions are ample to prevent any encroachment by one of them upon the province of another. But it is nevertheless a recognized necessity that one department must in many cases, in order properly to discharge its own duties, exercise the same sort of functions that are devolved generally upon a different branch of the government. Thus, the legislature cannot possibly perform its whole duty to the public without sometimes doing acts of a judicial nature. It must investigate and decide upon facts. It cannot do this with effect without the power to examine witnesses and to compel their attendance. In all such matters a municipal legislature differs in nothing from any other, except in so far as its powers are defined by the charter of its creation. This charter, again, must be construed in subordination to the constitution of the State.

The Charter of the city of St. Louis was formed by a board of thirteen freeholders, under a constitutional requirement, among others, that it should be " in harmony with, and subject to the Constitution and laws of Missouri."

Const. Mo., Art. IX., sect. 20.   An ordinance passed under authority of such a Charter must, of course, be equally in harmony with the Constitution and laws of the State; otherwise it will, in so far as it fails of such harmony, be invalid.   By the word "harmony," in this connection, is not to be understood an exact coincidence in all possible points of comparison.   Its meaning is, clearly, that no regulation established by the Charter, nor any made by its authority, shall do violence either to the declared laws, or to the policy or manifest governmental purposes of the State, as shown in her Constitution and statutory enactments.

Our Revised Statutes of 1879 provide as follows : —

"Sect. 3644. Every court, or judge thereof, shall have power to compel any party to a suit pending therein to produce any books, papers, and documents in his possession or power relating to the merits of any such suit, or of any defence therein.

"Sect. 3645. To entitle a party to the production of such books, papers, and documents, he shall present a petition, verified by the affidavit of himself or some other credible person, to the court, or to the judge thereof in vacation, upon which an order may be granted by such court or officer for the production of such books, papers, and documents, or that the party show cause why the prayer of the petition should not be granted."

It is argued for the petitioner that these provisions indicate the policy of the State in the protection of her citizens against compulsory exposure of their private papers and memoranda, unless found necessary to the ends of justice, upon a showing, by affidavit, of some credible person, and with full opportunity, before such exposure, to show cause against it; that a municipal ordinance which observes none of these safeguards, while it may not violate any specific prohibition, is yet not in harmony with the State law, and is therefore void.   If the cases were strictly par-

allel it might not be difficult to concede this alleged lack of harmony. But the statutory provisions are applicable only to the production of papers by a party to the suit. Witnesses who are not parties are left without any such means of protection. A simple application to the court, with a description of the book or paper wanted, is usually sufficient to obtain a *subpœna duces tecum*. The witness is never called upon to show cause against it. The petitioner in this case was not a party to the matter under investigation. He was a mere witness, and had no personal concern with it. There is, therefore, as applicable to his case, no want of harmony between the ordinance and the statute.

We do not understand that a witness who is served with a *subpœna duces tecum* is entitled to be informed from its face that the book or paper to be produced is material to the inquiry on hand, or that any other of the numerous requisites insisted on for the petitioner are recognized in practice as pertaining to that process. The warrant of commitment contained all necessary recitals, and nothing more was required, in that connection, to justify the petitioner's detention.

It has long been understood that the constitutional guaranties against unreasonable searches and seizures, against depriving any person of life, liberty, or property without due process of law, and in favor of the trial by jury, have no application to the compulsory production of muniments of testimony under proper authority, or to commitments for contempt by any tribunal lawfully acting in a *quasi*-judicial capacity. This is familiar law, and needs no elucidation. No rule of law exempts any person from producing books or papers material to an inquiry in the course of justice, merely because they are private. *Burnham* v. *Morrissey*, 14 Gray, 226.

The State Constitution requires that the Charter which the freeholders are to prepare for the city of St. Louis "shall, among other things, provide for a chief executive

and two houses of legislation, one of which shall be elected by general ticket." Art. IX., sect. 20. No limitation is further attached to the powers of this prospective city legislature, other than what is implied in the command that the Charter shall be in harmony with the Constitution and laws of Missouri, and in the reservation to the General Assembly of " the same power over the city and county of St. Louis that it has over other cities and counties of this State." Art. IX., sect. 25. The Municipal Assembly created by the charter under these constitutional provisions came into existence with all those inherent powers which are held necessary to the performance of legislative functions within the sphere of its authority, as marked out by the Constitution and Charter, and subject only to the restrictions above noted. Among those inherent and necessary powers is that of acquiring a certain knowledge of facts in order to the proper performance of legislative duties. It must inquire into the condition of the various departments of the municipal government, the official conduct of its officers, agents, and servants, and the legislative needs of different localities within the corporate territorial limits. To perform these and many other duties with any sort of effectiveness, it must in many cases, through its committees or otherwise, summon witnesses before it, and have the power of compelling their attendance, with the production of such books, papers, or documents as may be material to its investigations, under such forms and conditions as have been sanctioned by immemorial usage in judicial inquiry. Nothing in the Charter or in the Constitution and laws of Missouri forbids, even by implication, its use of such means and appliances, and the courts will not deny that reasonable privilege. We find nothing in the Charter, or in the ordinances regulating such proceedings, that clashes with time-honored usages in such cases.

The demurrer to the return is overruled and the petitioner remanded to custody. All the judges concur.