## In Re WILLIAM B. SANFORD, Petitioner in Habeas Corpus.

**In Banc, July 15, 1911.**

1. **TAXATION: Appeal.** The Legislature in providing that a property-owner feeling himself aggrieved by the assessment for taxes might "appeal" to the county board of equalization, did not use the word "appeal" in its technical legal sense, but simply meant to provide a method by which he might have the board review the former assessment upon his objection.

2. ————: **Legislative Power: Agencies.** The taxing power is vested in the Legislature, and it has power to create such agencies as it may deem fit and proper for collecting the revenues. And it has delegated to the county court the power to assess and levy taxes, and made the county board of equalization an auxiliary to the county court for purposes of assessment.

3. ————: **Cause on Trial.** There is a cause pending and on trial when the assessor in writing reports that a certain resident has made a false list of his property. with intent to defraud, and the county board of equalization has thereupon doubled the amount of his return, and given him notice of its meeting as a board of appeals, and he appears at the stated time and protests against the increase, and the board undertakes to ascertain if the increase is just and authorized by facts.

4. ————: ————: **Papers, Books, etc.: In All Cases.** The county board of equalization has the power to send for books, papers and witnesses, whenever they are necessary to ascertain the truth concerning any fact relating to any assessment of property in any case pending before it—whether the appeal pending before the board be one taken by the taxpayer, or

In re Sanford.

whether the board has itself increased his assessment, given him notice, and he appears in response thereto to protest against the increase.

5. ———: **Board of Equalization: Quasi-Judicial Body.** The county board of equalization, in the exercise of its powers and in the performance of its duties, acts judicially; and being a legislative agency for the assessment of taxes, it is a *quasi*-judicial body, exercising, at different times, both legislative and judicial functions.

6. ———: ———: **Power to Punish Witness for Contempt.** The county board of equalization has power to punish for contempt a witness who appears before it and refuses to testify concerning the amount of money he knows a taxpayer had on the first day of June. That power has not been conferred in express terms, but it is to be implied, *first*, from the section which imposes upon the board the duty to hear and investigate the truthfulness of all matters brought before it regarding the assessment of property and the equalization of taxes, and empowers it to subpoena witnesses and send for books, papers, etc.; *second*, from the purpose pregnant in all the statutes that every person should bear the burden of taxes in proportion to his property and that no one should aid designing persons to escape their just burdens by refusing to testify concerning matters within their own knowledge, in which the whole public is interested; and, *third*, from the familiar rule that when a power is given by statute, everything necessary to make it effectual is necessarily implied.

    *Held*, by VALLIANT, C. J., concurring, that the board of equalization is not a court, but an arm of the Legislative Department; and, while it does not have power to punish for criminal contempt, it does have power to enforce obedience to its lawful orders, by coercion. [*Woodson, Graves, Kennish* and *Brown* concur.]

7. ———: ———: ———. **Cashier of Bank.** The county board of equalization, following statutory procedure, undertook to increase the assessment of money on hand belonging to a taxpayer on the first of June from $3,900 to $7,800, and subpoenaed the cashier of a bank to appear, present his books, and show how much money the taxpayer had on deposit in the bank on that day. The cashier appeared, but refused to testify, and the board committed him to the county jail until he consented to testify. *Held*, that the board had power to commit him for contempt, and his writ of *habeas corpus* must be denied.

PETITIONER REMANDED.

*W. D. Tatlow* and *Barbour & McDavid* for petitioner.

(1) (a) The Constitution divides the powers of government "into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of these departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted." Art. 3, Const. Mo.; Kilbourn v. Thompson, 103 U. S. 168. (b) The Constitution declares that the taxing power belongs to the legislative department of the government. (Art. 10, sec. 1). This is the universal holding of all the courts. Silven v. County, 13 L. R. A. (N. S.) 716; Board v. King, 67 Fed. 202; Meriwether v. Garrett, 102 U. S. 472; Rees v. Wattertown, 19 Wall. 58. (c) It has been expressly held by the Supreme Courts of Arkansas and Kansas that the county board of equalization of such states, possessing exactly the same powers and required to perform the same duties as ours, does not belong to the judicial department of the State, and it is therefore not a judicial tribunal; and hence a statute attempting to confer the right of appeal from the decision of such a board to the courts for review is unconstitutional, as violative of the provisions of the Constitution dividing and separating the governmental powers. Silven v. County, 13 L. R. A. (N. S.) 716; County v. Matthews, 46 Ark. 383. (d) The Constitution, in order that there could be no mistake, expressly provides, "the judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, St. Louis Court of Appeals, Circuit Courts, Criminal Courts and Municipal Corporation Courts." (Art. 6, sec. 1.) (e) It has been unani-

mously decided by the Supreme Court in banc that the power of commitment for contempt is clearly and essentially a judicial power, and that it cannot be conferred upon any but the courts named in the Constitution. And that an act of the Legislature attempting to confer it upon an administrative board, or to vest it in the courts to be exercised as an adjunct to such board, is unconstitutional and void. State ex rel. v. Ryan, 182 Mo. 349; State ex rel. v. Nast, 209 Mo. 719; Farnham v. Colman, 1 L. R. A. (N. S.) 1142; In re Mason, 43 Fed. 515. (f) The county board of equalization is purely a creature of the statute; it is nowhere referred to in the Constitution. The power it exercises is clearly a legislative and not a judicial power, and under the constitutional provision, supra, the judicial power of commitment for contempt cannot be conferred upon such a board. This is too plain for argument. The provision of the Constitution itself is as plain as the English language can make it. Judicial construction can add nothing to it. It was expressly decided in State ex rel. v. Ryan, 182 Mo. 349. (2) Laying aside the Constitution and ignoring its plain provisions, the county board of equalization in this instance had no power of commitment for the obvious and plain reason that the statute (sec. 11,406) only purports to authorize the board to send for persons and papers in relation to an appeal pending before the board. The only appeal provided for is by the tax payer to the board from the valuation made by the assessor. In other words the statute only purports to give the power to send for persons or papers when the board is determining an appeal. It is not given as an inquisitorial power to the board in order that the board may ascertain and uncover property not returned. (3) It will be observed that while the statute purports to authorize the board to send for persons and papers in determining an appeal, it does not provide, even in such cases, in express terms, that for

failure of the witness to appear or to give testimony, or to produce books, that he may be committed. No power to do any of these things is given or purported to be given when no appeal is pending, and even in an appeal where the power is purported to be given there is no express provision authorizing the board to commit for contempt. The general and universal rule in this country is that the power of commitment for contempt is not an inherent power belonging to an inferior tribunal or executive boards. There is a concensus of judicial opinion on this point. This rule is fatal to the power of the board to commit the petitioner Sanford. State ex rel. v. Ryan, 182 Mo. 349; In re Palmeter, 51 Pac. 288; McHenry v. State, 16 L. R. A. (N. S.) 1069. This rule has been recognized over and over again by the courts of this State with reference to the power of a notary public to commit. Ex parte Krieger, 7 Mo. App. 367; Ex parte Mallinkrodt, 20 Mo. 493.

*Delaney & Delaney* for respondent.

(1) Subject to the limitations imposed by the Constitution of Missouri, and subject to the limitations imposed by the Federal Constitution and Federal decisions, the State of Missouri, through its Legislature, has the power to assess property, levy taxes thereon, and has the power to provide any plan or general scheme to carry out such purpose. It has the inherent power to tax. The Constitution is a limitation, not a grant of such power. Article 10, Mo. Const.; Glasgow v. Rowse, 43 Mo. 479. As there are no inhibitions in the Constitution, the State has the power to create such agencies as it sees fit to collect the revenue. And the Legislature has the undoubted right to delegate this power to tax. Trust Co. v. St. Joseph, 66 Mo. 680; St. Louis v. McCann, 157 Mo. 307. The agency selected to exercise this, the greatest attribute of sov-

ereignty—the right to assess and levy taxes, and through which the bulk of taxes necessary to meet the demands of government is collected—is the county court. Such court although inferior is nevertheless a constitutional court. Mo. Const., sec. 1, art. 6; McWilliams v. Burnes, 115 Mo. App. 6. But while the Legislature has this inherent right to tax, one of the limitations imposed is uniformity. Secs. 3 and 4, art. 10, Constitution. To secure this equal, equitable and uniform taxation and in aid of the county court and as ancillary to such court, a board of equalization is provided for. (2) Under the Constitution, taxes must be uniform and equal, and in the general scheme it is not only within the power of the State, through the Legislature, to create the county boards of equalization, but it is the duty of the State to create such a board, or some agency, or to provide some method to secure equalization of taxes. Secs. 3 and 4, art. 10, Constitution. Such board as stated is ancillary to the county court and when completed its work is passed up to the county court and then the final valuations and extensions, levy and assessments are made. (3) The county board of equalization so created is a quasi-judicial body. The object of the law in creating said board is to equalize taxation throughout the county and in and through any given section of the county; to empower said board to equalize taxes in given instances by raising or reducing the assessments returned, whether such assessments be based on return made by the taxpayer to the assessor or made by the assessor himself; and to add property omitted from assessments and to assess and equalize the value thereof. The power thus granted is a judicial power, not a ministerial one; nor it is an arbitrary power. The power to equalize negatives the idea of an arbitrary or a ministerial act. Black v. McGonigle, 103 Mo. 192; Lead Co. v. Sims, 108 Mo. 222; State v. Lumber Co., 198 Mo. 130; Ward v. Board,

135 Mo. 309; State ex rel. v. Baker, 170 Mo. 383; State ex rel. v. Hoyt, 123 Mo. 348; State ex rel. v. Bank, 120 Mo. 175; State ex rel. v. Cunningham, 153 Mo. 654. (4) While the board is a creature of the statute, yet being a quasi-judicial body it must necessarily have such inherent power as is necessary to its vitality. The power to equalize taxes, for which express purpose the board is created, and the power to add omitted property, a power conferred by Sec. 11407, R. S. 1909, necessarily imply the power to examine. And the power to examine implies the power to commit. In re Dunn, 9 Mo. App. 259; Sutherland Stat. Const., sec. 341. a. The act creating such board is not unconstitutional. The power granted while judicial is not an infringement of section 1, article 6, Constitution. The creation of such boards may be sustained and the power to punish for contempt may be sustained on either of these theories: 1st. That such board is ancillary to the county court which is a constitutional court. That being in aid of such court, as a notary public is of a circuit court in the taking of depositions or as a grand jury in the examination into offenses, the power to commit is properly delegated. 2d. The board is quasi-judicial. It is exercising a delegated power vested in the Legislature. b. While the power to punish for contempt is essentially a judicial power, it is not limited to courts only. It inheres in legislative bodies and may be exercised by tribunals or boards possessing judicial functions. When exercised by legislative bodies it is usually in the court on an investigation, judicial in its character, yet necessary to the proper discharge of legislative functions. This may be delegated. (5) In determining the powers of such board the words of express grant are not alone to be considered, but the doctrine of reasonable and necessary implication are also to be considered. In re Dunn, 9 Mo. App. 261; Sutherland Stat. Const., sec. 341; Conn v Cass Co., 151 Ind. 517; Studebaker

v. Studebaker, 152 Ind. 89. (6) While we contend that the county board of equalization has the power inherently as well as impliedly to compel appearance of witnesses and to compel the production of books; and while we contend that said section 11406 is merely declaratory of such implied power or inherent right, yet, as an independent legislative declaration, we contend that section 11406, R. S. 1909, confers upon said county board of equalization the said power to compel the appearance of witnesses and to compel the production of said books. All of the laws governing assessment and collection of the revenue are to be construed together. And that construction which will give life to the law and which will aid in the accomplishment of the conceded purpose of the law will be adopted rather than such construction as will defeat the manifest intent of the Legislature. Sutherland Stat. Const., sec. 341. (7) Such power to compel production of books does not contravene any constitutional right of the citizen; is not in derogation of any well-settled rule of public policy of the State; does not contravene any principle of the common law. In re Dunn, 9 Mo. App. 255; Ex parte Brown, 72 Mo. 83. (8) Sec. 11406 does not limit the power to compel the production of books and papers in cases of appeal from an assessment by the assessor as contended by petitioner. In re Dunn, 9 Mo. App. 255; Ex parte Brown, 72 Mo. 83. (9) The doctrine of privilege cannot be invoked. In re Dunn, 9 Mo. App. 261; Ex parte Brown, 72 Mo. 83. The point of "privilege" is made in the petition for writ herein but is not suggested in the brief or argument. However, we respectfully call attention to this point. As the rule of privilege tends to prevent full disclosure of truth, it will be limited to cases which are strictly within the principle of the policy that gave birth to it. The common law doctrine of privileged communication will not be extended by implication. Nor extended to protect secrets of the

ordinary transactions of business.  Secrets disclosed in the ordinary course of business, or the confidence of friendship are not protected; nor confidential communications to parents from children, nor to servants from masters, nor does the privilege extend to communications to the clerk, or to the steward or to the banker.  Loyd v. Freshfield, 2 C. & P. 325; Valliant v. Dodemead, 2 Atk. 524; Falmouth v. Moss, 11 Price, 455; Lee v. Birrell, 3 Camp. 337; Webb v. Smith, 1 C. & P. 337; Best on Ev., sec. 586; Hoffman v. Smith, 1 Caine (N. Y.), 157; Cady v. Walker, 62 Mich. 157; Wilson v. Rastall, 4 T. R. 758; Wharton on Ev., sec. 607; State v. Isham, 6 How. (Miss.) 35; State v. Charity, 2 Dev. (N. C.) 543; 23 Am. & Eng. Law (2 Ed.), 99.   And to come to the point directly in issue, it is held: A banker is not privileged from being examined or producing his books to show the state of a customer's account.  Loyd v. Freshfield, 2 C. & P. 325; Emmott v. Newspaper, 62 L. J. Q. B. D. 77; Stannum v. McRae, 18 Ont. Pr. 185; MacKenzie v. Taylor, 6 L. C. Jur. 83.

WOODSON, J.—This is an original proceeding instituted in this court under the Habeas Corpus Act, having for its object the release of the petitioner from the custody of the sheriff of Greene county, where he is held for contempt under a commitment issued by the board of equalization, of that county, for refusing to testify in a certain cause pending before it.

The facts of the case are few and undisputed, and are substantially as follows:

On June 17, 1910, one T. E. Hendrix, a resident of Greene county, made a return of his taxable property, for the year 1911, by giving a list thereof to the county assessor.  By this list he returned no money on hand or on deposit on June 1, 1910.  The county board of equalization, on the first Monday in April,

1911, the same being the third day thereof, convened as required by law. On that day the assessor, in pursuance to the provisions of section 11354, Revised Statutes 1909, made a report in writing to the board of equalization naming said Hendrix, among others, as having made a false and fraudulent return of his taxable property. Acting upon the report of the assessor, as well as by its authority to add property omitted, conferred by section 11407, Revised Statutes 1909, said board on the 13th day of May, 1911, added and increased the assessment of said Hendrix to the amount of $3900, this being fifty per cent of $7800, money claimed and believed by the board to have been on deposit in the Holland Banking Company of Springfield, Missouri, to the credit of said Hendrix, on June 1, 1911. As required by said sections of the statute, the board gave to said Hendrix five days' written notice of said increase of his assessment, and specified therein the place and date when he might appear and defend against said charge of the assessor, and to show cause, if any, why said increase of assessment should not be made.

On May 25, 1911, the board met to hear defenses, if any, against such charges, and to hear protests interposed, if any, against such increased assessments. On said day, said Hendrix, in pursuance to said notice, appeared before said board and filed his affidavit for an appeal from, or in protest against, such action of the board. He also testified orally before said board in support of said appeal or protest. In his affidavit and by his oral testimony, Hendrix swore that he had no money on deposit in the Holland Banking Company on June 1, 1910.

Thereupon, further action in the premises was deferred until the 1st day of June, 1911, when the said board caused a subpoena to be issued and served upon the petitioner, Wm. B. Sanford, cashier of the Holland Banking Company. The subpoena was in con-

ventional form, reciting the foregoing facts, and directed to the sheriff of said county, commanding him to serve same on said Sanford, commanding the latter to appear and testify in the matter of the appeal or protest of said Hendrix, also directed him to produce such book or books as would show the cash balance, if any, to the credit of said Hendrix, in said bank, on June 1, 1910, or to submit to it a statement showing such balance, if any, according to such book or books.

"The subpoena as before stated, was duly served upon said Sanford, and the said Sanford in obedience to the command thereof appeared before said board.

"Sanford, however, declined and refused to testify and refused to produce any book of said Banking Company and refused to submit any statement of entries in such books and refused in any manner to give evidence on the question of the balance to the credit of said Hendrix in said Banking Company on June 1, 1910.

"Thereupon the said Board of Equalization adjudged said Sanford in contempt and adjudged that he be ordered committed for such contempt.

"Following such record entry adjudging Sanford so guilty and in obediance to the order of said board so entered of record, the said Board of Equalization by its president issued its writ of commitment."

This writ was in the usual form, reciting the foregoing facts at great length, and commanded the sheriff to take the person of said Sanford, and commit him to the county jail, until he testified in the cause and otherwise obeyed the command of the subpoena, or until he was duly discharged according to law.

In obedience to said writ of commitment the sheriff took said Sanford into his custody. Thereupon, said Sanford appealed to this court for a writ of

*habeas corpus,* which was duly issued and made returnable to this term of the court. The petition for that writ of *habeas corpus* states in substance the facts before mentioned and then asks to be discharged from the custody of the sheriff for the following reasons:

"1. Because the said Board of Equalization had no right, power or authority, under the law, to make or issue said order or commitment.

"2. Because the said Board of Equalization is not a judicial body and does not possess judicial power under the Constitution and the laws of Missouri.

"3. Because the action of said Board of Equalization, in making and issuing the said order or commitment, is contrary to and directly in conflict with the provisions of section 1, of article 6, of the Constitution of the State of Missouri, relating to the judicial power of the State.

"4. Because the said Board of Equalization was, and is, without power or authority to commit or to restrain your petitioner of his liberty, as it has done in this proceeding.

"5. Because sections 11402 to 11407, inclusive, of the Revised Statutes of Missouri, 1909, in so far as they attempt or seek to confer on said Board of Equalization judicial powers, or power and authority to send for persons and papers and compel the attendance of witnesses, or power to punish for contempt, or power to commit any person who may refuse to testify before it in proceedings of this character, are unconstitutional and void, because contrary to and in direct conflict with the provisions of section 1 of article 6 and article 3 of the Constitution of Missouri, and because the Legislature of this State could not confer such power upon said board, even if it should attempt or desire to do so.

"6. Because said order or commitment, under which your petitioner is being held, was made and issued on and under proceedings which were, and are,

wholly illegal and void, for the reasons above specified."

The sheriff's return to said writ, also recites in detail the foregoing facts, and concludes by stating that the petitioner is not unlawfully deprived of his liberty, etc.

The proceedings had before the Board of Equalization were under the following sections of Revised Statutes 1909, to-wit, 11354 and 11407, both inclusive, which in so far as they are here material read as follows:

"Section 11354. If any person shall, with intent to defraud, deliver to any assessor a false list of his property, it shall be the duty of the assessor to give notice in writing thereof to the county board of equalization; and the said board shall, on receiving such notice, give notice thereof to the person who shall have furnished such false list, which notice shall specify the particulars in which said list is alleged to be false, and shall fix a time for a hearing of the matter, on which day the person aforesaid shall have the right to appear and defend against such charge; and if it appears that such person is not guilty as charged, the said board shall dismiss the matter; but if it appear that such person is guilty as charged, it shall be the duty of said board of equalization to ascertain the true amount and value of all property of such person subject to taxation, and to tax the same as similar property of other persons is taxed, and in addition shall, by way of penalty for furnishing such false list, treble the amount of taxes thus ascertained against such person; and such person shall be required to pay such treble amount, and shall in addition thereto be liable to be punished for perjury.

"Section 11402. There shall be in each county in this State, except the city of St. Louis, a county board of equalization, which board shall consist of the county clerk, who shall be secretary of the same, but have

no vote, the county surveyor, the judges of the county court, and the county assessor, which board shall meet at the office of the county clerk on the first Monday in April of each year. . . .

"Section 11403. Said board shall have power to hear complaints and to equalize the valuation and assessments upon all real and personal property within the county which is made taxable by law, and, having each taken an oath, to be administered by the clerk, fairly and impartially to equalize the valuation of all taxable property in such county, shall immediately proceed to equalize the valuation and assessment of all such property, both real and personal, within their counties respectively, so that each tract of land shall be entered on the tax book at its true value. Provided, that said board shall not reduce the valuation of the real or personal property of the county below the value thereof as fixed by said State Board of Equalization.

"Section 11404. The following rules shall be observed by county boards of equalization: First, they shall raise the valuation of all such tracts or parcels of land and any personal property, such as in their opinion have been returned below their real value, according to the rule prescribed by this chapter for such valuation; but, after the board shall have raised the valuation of such real estate, it shall give notice of the fact, specifying the property and the amount raised to the persons owning or controlling the same, by personal notice, through the mail or by advertisement in any paper published in the county, and that said board shall meet on the fourth Monday of April, except in counties containing a population of more then seventy thousand and less than one hundred thousand, in which counties such board shall meet on the fourth Monday of March each year, to hear reasons, if any may be given, why such increase should not be made; second, they shall reduce the valuation

·of such tract or parcels of land or any personal prop·erty which, in their opinion, has been returned above its true value as compared with the average valua·tion of all the real and personal property of the coun·ty.

"Section 11405. The said board shall hear and determine all appeals made from the valuation of property made by the assessor in a summary way, and shall correct and adjust the assessment accordingly. The county clerk shall keep an accurate record of the proceedings and orders of the board, and the assessor ·shall correct all erroneous assessments, and the clerk ·shall adjust the tax book according to the orders of said board and the orders of the State Board of Equalization. . . .

"Section 11406. The said board of eqalization ·shall have power to send for persons and papers and ·compel the attendance of witnesses in relation to any ·appeal before them, and it shall be the duty of the sheriff of the county to execute such process as may be issued to this end. A majority of said board shall ·constitute a quorum, and a majority of them present ·shall determine all matters of appeal or revision.

"Section 11407. The county board of equaliza·tion, at its annual meeting in each year, in addition to the powers now conferred by law, shall have authority to assess and equalize the value of any property that may have been omitted from the assessor's books then under examination by said board, and in case ·said board shall add any property, real or personal, to said assessor's books, it shall cause notice in writing to be served upon the owner of such property, ·stating the kind and class of property and the value fixed thereon by said board, and naming the time and place, not less than five days thereafter, when and where such owner may appear before said board and show cause why said assessment should not be made. At the time fixed said board shall again meet and

give an opportunity to said taxpayer to be heard in regard to said assessment, and may change or alter the same upon it being shown by said owner that said assessment was erroneous or improperly made; otherwise, said property and the valuation, as fixed by said board, shall be extended upon the assessor's books, as in case of other property. . . . ''

I. Counsel for the petitioner insist, first, that under section 1 of article 10 of the Constitution, the taxing power of the State belongs to the Legislature; and second, that this power has not been extended to the judiciary. That being true, as they contend, they further insist that the statutes before quoted, which purport to grant to the property-owner the right to appeal from assessment made by the assessor and by the board of equalization, is void, for the reason that under the Constitution an appeal will only lie from the decisions of one court to another court, and not from the orders and judgments made by a ministerial, executive or legislative body, and that consequently the statutes before mentioned, authorizing appeals to or from the board of equalization (which is a legislative body, as they contend), are unconstitutional, null and void.

In support of this position we are cited to the cases of Silven v. Osage County Coms., 13 L. R. A. (N. S.) 716 (Kansas); and Prairie County v. Matthews, 46 Ark. 383.

The former case in brief holds that an assessment of property for purposes of taxation is not a judicial function, and that the statutes providing for an appeal from the county board of equalization to the district court, were unconstitutional and void. But in deciding that question the Supreme Court of Kansas used this language: ''The decisions as to the power of the Legislature to permit an appeal to the judiciary from tax assessments are limited in number,

and are by no means in accord. The weight of author-
ity seems to allow such an appeal, but in some cases
this is due to the liberal provisions of the State Con-
stitution.'' It is seen from the language quoted that
even that court considered that the weight of author-
ity was against its ruling in that case.

In the latter case, the Supreme Court of Arkan-
sas, in discussing the same question, used this lan-
guage:

''Matthews applied by petition to the county court
to reduce the assessment of his lands. He represent-
ed that he had given in for assessment fifty-five tracts,
within the time and in the manner prescribed by law,
and the assessor had valued them; but the board of
equalization had, arbitrarily and without any evidence,
raised such valuations to the extent of $5325; that this
action was taken in his absence and without notice
to him, but as soon as he learned what had been done
he went before the board and unsuccessfully endeav-
ored to induce it to reconsider its action. But the
county court, finding that the petitioner had not asked
for nor obtained the allowance of an appeal from the
board, refused to entertain his petition or take juris-
diction of the matter.

''Matthews appealed to the circuit court and was
there confronted with a motion to dismiss his appeal,
upon two grounds: · First, The appeal should have
been taken from and before the equalization board,·
the county court being powerless to grant an appeal
from the board to itself; and, second, The county
court has no appellate jurisdiction under any circum-
stances. But the circuit court denied the motion and
proceeded to give Matthews such relief as, in its opin-
ion, the proofs showed he was entitled to.

''The only question raised by the present appeal
is one of jurisdiction.

''Sec. 5687, Mansfield's Digest, after creating a
board for the equalization of taxable values in each

county, provides that any party aggrieved by any action of the board may appeal therefrom to the county court. It is not prescribed when nor how the appeal is to be prayed, nor by whom, nor upon what conditions it is to be granted.

"Our opinion is that, in this provision, the Legislature did not use the terms 'party' and 'appeal' in their technical legal sense of party to a suit, and the removal of a cause from an inferior to a superior court for review; but in their popular signification of 'person' in the one case, and 'invoke the aid of' in the other. This is the only construction upon which the provision can stand. For appeals only lie from one court to another; never from an executive officer to a court. By our Constitution the powers of government are distributed among three distinct departments, each confided to a separate body of magistracy. And no person, or set of persons, of one of these departments, can exercise any power belonging to either of the others, except in certain instances, for which special provision is made, not necessary to be here enumerated. Now, the functions of the board of equalization are ministerial. Its members are assessors and valuers of property. None of the judicial power of the State is vested in them, either individually or collectively. Their power is limited to raising and reducing the valuation of property which the assessor has returned on his list. This is not a judicial proceeding. The conclusion reached by them is not the determination of a court. The board is not a court in any sense. No cases are pending before it for adjudication. Parties are not brought in by any sort of process. No judgment is rendered, and no means of enforcing any judgment are provided. Hence no appeal, strictly speaking, can be taken or authorized from its decision to the county court, or to any other court, because it is not a judicial tribunal competent to pass upon any case. [Constitution of

1874, sec. 4, and art. 7, sec. 1; Dunn v. State, 2 Ark. 230; Allen, ex parte, 26 Ib. 9; Logan Branch Bank, ex parte, 1 Oh. St. 432.]

"The Revenue Act of January 1, 1858, sections 3 and 4 (Gould's Dig., ch. 148, secs. 35 and 36), enacted that any person who might think himself aggrieved by the assessment of his property might appeal to the county court and have the assessment corrected, if found incorrect; the appeal to be in writing, to state specially the grounds of appeal and the thing complained of, and no other matter to be considered by the court."

From this language it is seen that the Arkansas court was considering a statute which provided for an appeal from the action of the board of equalization to the county court, and not an appeal from an assessment made by the assessor to the board of equalization, or from an assessment made by the latter to itself, as is provided for by our statutes.

By reading the statutes under consideration, it is perfectly clear that the Legislature never used the word "appeal" as there employed in its technical legal sense, but simply provided that the party who felt himself aggrieved by the assessment made by the assessor or by the board itself, might, if he saw fit, have the latter body review the former assessment by objecting or protesting against the same. This is made clear by the fact that the Legislature in some of the sections quoted, provides that the party aggrieved by the assessment may "appear" and show cause, etc., while in other sections it provided that he may appeal from the assessment and show cause, etc. But each section has the same object in view; namely, to give the property-owner a hearing or a rehearing as the case might be, and permit him to show cause, if any he has, why the assessment as made should not stand.

Taking this view of the case, we are of the opinion that the question as to whether or not the board is a judicial body, in the sense in which counsel for the petitioner contends, is wholly immaterial. That question, however, will be material when viewed from a different standpoint, as we will presently attempt to show.

While it is true that the taxing power of the State is vested in the Legislature, yet that power is not granted to it by the Constitution, but it is inherent in the Legislature, and subject to the limitations prescribed by the State and Federal Constitutions the Legislature has the absolute power to assess property, levy taxes thereon, and provide the plan and general scheme by which to carry out such purpose. [Glasgow v. Rowse, 43 Mo. 479; American Ex. Co. v. City of St. Joseph, 66 Mo. l. c. 680.] Also see article 10 of the Constitution, which is devoted to taxation.

Since there are no constitutional restraints placed upon the Legislature, the State has the power to create such agencies as the Legislature may deem fit and proper for the collection of its revenues. [American Ex. Co. v. City of St. Joseph, supra; St. Louis v. McCann, 157 Mo. l. c. 307.]

In this State, the Legislature has seen fit to delegate to the county courts of the various counties the power to assess and levy the taxes necessary to meet the demands of government. The county court is a constitutional court. [Sec. 1, art. 6, of the Constitution.]

And when we read the statutes creating the board of equalization, defining its powers and prescribing its duties, it is perfectly apparent that it was the design of the Legislature to make it auxiliary to the county court in the assessment of property for the purposes of taxation, and that, when completed, its work is referred to the county court, which makes or

confirms the final valuations, assessments, levies and extensions.

Sections 3 and 4 of article 10 of the Constitution provide that all taxes shall be uniform and equal, and levied and collected by general laws. It is perfectly obvious that the Legislature itself could not discharge these endless and important duties, but evidently it was the design of the framers of the Constitution that the Legislature should not only provide the general scheme of taxation, as previously stated, but that it should also create such a board or some other working agency by which that scheme of taxation and equalization could be carried into effect.

To hold that the Constitution required the Legislature itself to discharge the multiplicity of duties which are now imposed upon the various boards of equalizations of the State (which is practically the claim of counsel for the petitioner) would virtually destroy the power of the Legislature to levy and collect any taxes whatever, for the obvious reason that it would be a physical impossibility for it to perform the many duties which are now performed by the one hundred and fourteen boards now existing in the State, to say nothing of the various other agencies which have been created to levy and collect municipal and other local taxes.

Moreover, there is not a State in the Union where the Legislature thereof has ever undertaken to perform such arduous duties. Each and all of them have enacted a general scheme of taxation, and then created some agency similar to our board of equalization to carry out that scheme and collect the taxes necessary to defray the expenses of government. The character of the agency is wholly immaterial. Those detailed could be legally conferred upon the county courts of the various counties, but in performing those duties they would be carrying out the will of the Legislature, as its agents.

We are therefore of the opinion that there was a cause pending and on trial before the board of equalization at the time the petitioner refused to testify; but not upon an appeal within the strict legal sense of that word, but by virtue of the fact that the petitioner, under the authority of the statutes before quoted invoked the aid of the board to review and modify the former assessment, which was objected to by Hendrix.

II. It is next insisted by counsel for the petitioner that the board of equalization had no power to commit him, for the reason that section 11406, Revised Statutes 1909, only purports to authorize the board to send for persons and papers in relation to an appeal pending before the board; and that the only appeal authorized by the statutes is one taken by the taxpayer to the board from the assessment by the assessor.

That insistence, in our opinion, places a too narrow construction upon the act governing the board of equalization, and its authority and duties in equalizing the taxes of the county. While it is true, that act only uses the word appeal in connection with assessments made by the assessor, as will be seen by reading section 11405, Revised Statutes 1909, but equivalent words are used in connection with assessments, and increased assessments made by the board itself, as will be observed by reading sections 11354 and 11404, Revised Statutes 1909.

The object to be attained by those three sections is precisely the same, namely, to give the taxpayer a hearing and permit him to show cause, if any he has, why the assessment of his property, by whomsoever made, should not be reduced; and the procedure by which that object is to be acomplished is precisely the same in each of those three sections. No good reason can be suggested which would have caused the Legis-

lature to have empowered the board to send for books and papers, and hear witnesses, upon an appeal taken from an assessment made by the assessor, and at the same time to withhold that authority from the board when it was called upon to review an assessment made by itself under the authority of said sections 11354 and 11404. Such evidence would be just as essential, if not more so, to ascertain the truth in the latter case as in the former, for the reason that fraud may, and often does, play an important part in the latter, but never in the former.

When we consider the entire act together, its object and the procedure by which its object is to be accomplished, there can be no doubt but what the Legislature intended thereby to empower the board to send for books, papers and witnesses, whenever necessary to elicit the truth of any fact pending before it.

We therefore rule this insistence against the petitioner.

III. It is finally insisted that, even though the board has the power to send for books, papers and witnesses, yet the act does not confer upon the board the power to commit for contempt, for failure to produce the books and papers or where the witness refused to testify.

In support of that proposition, we are cited to the following cases: State ex rel. v. Ryan, 182 Mo. 349; In re Palmeter, 51 Pac. 288; McHenry v. State, 16 L. R. A. (N. S.) l. c. 1069; State ex rel. v. Nast, 209 Mo. 708.

In the Ryan case this court held that the Board of Mediation and Arbitration was not a court, and if a court, it was not within the purview of the Constitution, and for that reason it had no power to commit for contempt.

In the Nast case, this court held that the act there under consideration did not in fact create the court

designated therein as the "General Sessions," for the reason that the things essential to constitute a court were not contained in the bill.

Those cases, therefore, have but little bearing upon the question here under consideration.

In the Palmeter case the Supreme Court of Kansas held, that a justice of the peace had no implied power under the laws of that State to imprison for contempt.

In the McHenry case, the Supreme Court of Mississippi held that a person is not guilty of contempt in refusing to obey an order which the court had no power to make, even though the court had general jurisdiction over the proceedings in which the order was made.

The latter case clearly has no application to the facts of this case; and this leaves the Kansas case as the only one upon which counsel for the petitioner bottom their contention.

Counsel for the board upon the other hand insist that "the County Board of Equalization is a quasi-judicial body; that the object of the Legislature in creating said board is to equalize taxation throughout the county, to empower said board to equalize taxes in given instances by raising or reducing the assessments returned, when such assessments are based upon the returns made by the taxpayers to the assessor himself; and to add property omitted from assessments, and to assess and equalize the value thereof. That the power thus granted is a judicial power, not a ministerial one; nor is it an arbitrary power; and that the power to equalize negatives the idea of an arbitrary or a ministerial act. That the power thus granted to the board is not only judicial in character, but in its exercise the board, as auxiliary to the county court, is exercising an attribute of sovereignty, and to that extent takes the place of the Legislature, and in exercising such judicial functions

has the incidental powers which the Legislature possesses in the premises."

That the board of equalization in the exercise of its powers, and in the performance of its duties, acts judicially, is no longer an open question in this State, as is shown by the following cases: St. Joseph Lead Co. v. Simms, 108 Mo. 222; Black v. McGonigle, 103 Mo. 192; North Missouri Ry. Co. v. Maguire, 49 Mo. 482; St. Louis Mutual Life Ins. Co. v. Charles, 47 Mo. 462; State ex rel. v. Cunningham, 153 Mo. l. c. 654; State ex rel. v. Hoyt, 123 Mo. 348. That being unquestionably true, and it being equally true that the board is a legislative agency, it seems clear to our minds that the board is a quasi-judicial body, exercising at different times, both legislative and judicial functions.

The foregoing has been the practical construction which has been placed upon this act by the board itself, and by all the courts of the State ever since its enactment, which was almost a whole century ago.

Having reached the conclusion that the board of equalization is a quasi-judicial body, we are thereby brought to the vital question involved in this case; namely, Has that body the power or authority to commit for contempt? That question has never before been presented to this court for determination, and like most new questions it is not without its difficulties and perplexities. We will, therefore, be required to approach it upon principle rather than from precedent.

In the first place it may be stated without fear of contradiction that all superior courts, which are courts of record, have the inherent right to punish for contempt. This authority is inherent from the very nature of their organization, and is essential to their existence and protection and to the due administration

236 Sup.—44

of justice. [7 Am. and Eng. Ency. Law (2 Ed.), p. 30.]

But at common law an inferior court could not punish for contempt of court; that is, courts of record and of limited jurisdiction. In most of the States, however, and in England and Canada, the power to punish for contempt has been conferred upon almost all inferior courts. [7 Am. and Eng. Ency. Law (2 Ed.), p. 31.] And in many of them that power has been conferred upon city councils, boards of tax commissioners, referees, grand juries, justices of the peace, and notaries public. [7 Am. and Eng. Ency. Law, (2 Ed.), p. 327.]

It has also been held that such authority may be conferred by express statute, or by necessary implication. [Swafford v. Berrong, 84 Ga. 65; In re Dunn, 9 Mo. App. 255; Heerdt v. Wetmore, 2 Robt. (N. Y.) 697; In re Clark, 65 Conn. 17; In re Abeles, 12 Kan. 451; In matter of Merkle, 40 Kan. 27; Ex parte McKee, 18 Mo. 599; Dogge v. State, 21 Neb. 272; De Camp v. Archibald, 50 Ohio St. 618; Ex parte Mallinkrodt, 20 Mo. 493; Haight v. Lucia, 36 Wis. 355; Ex parte Gfeller, 178 Mo. 248; Ex parte Goodin, 67 Mo. l. c. 641; Ex parte Munford, 57 Mo. 603.]

It is conceded and it is true that there is no statute in this State conferring upon the board of equalization, in express terms, the power to commit for contempt. It must therefore follow that if the board possessed that power it is conferred upon it by necessary implication, and not by express statute. The question then naturally suggests itself, Has that power been conferred upon the board by implication? In my opinion that question must be answered in the affirmative, and for the following reasons:

(a). Because section 11406, in express terms, empowers the board to send for books and papers and to subpoena witnesses; and sections 11354, 11404 and 11405 impose upon the board the duty to hear and

investigate the truthfulness of all matters brought before it regarding the assessment and equalization of taxes.    That investigation cannot be made with any degree of certainty, without the board can compel the attendance of witnesses and the production of such books and papers as relate to matters under investigation.

The Legislature recognized that fact by authorizing the board to subpoena witnesses and to send for books and papers.    But that would avail nothing if that was the extent and limit of the board's power in that regard.    Appearing without testifying, and producing the books and papers without submitting them to the inspection of the board would shed no light whatever upon the issues pending before it.

What sense would there be in section 11406, which authorizes the board to subpoena witnesses and send for documents, if it is powerless to compel the witnesses to testify upon appearance, in obedience to the subpoenas?    None whatever, I submit.

(b).    When we view the great importance of proper assessments of property and equalization of values for the purpose of taxation to both the State and her citizens, it is not to be presumed that the Legislature intended that designing and unscrupulous persons might escape all taxation by simply refusing to return their property for taxation, or that the State should lose her taxes simply because some witness does not care to give testimony regarding his knowledge of his neighbor's property.    The very object the Legislature had in mind when it authorized the board to send for witnesses and documents, was to unearth property which the unscrupulous persons had concealed or had refused or neglected to return for taxation; and then to hold that they could not be compelled to testify regarding those important matters, would be nothing less than placing a premium upon fraud and dishonesty.

(c). There is a familiar rule of statutory construction which fits this case like a glove fits the hand, namely, That when a power is given by statute, everything necessary to make it effectual or requisite to attain the end, is necessarily implied. [1 Kent's Com.. 464; Stief v. Hart, 1 N. Y. 20 (Jewett, C. J.); Mitchell v. Maxwell, 2 Fla. 594; In re Neagle, 135 U. S. 1; Commonwealth v. Conyngham, 66 Pa. St. 99; Witherspoon v. Dunlap, 1 McCord 546; City of St. Louis v. Bell Telephone Co., 96 Mo. 623; Union Depot Ry. Co. v. Southern Ry. Co., 105 Mo. 562; Springfield v. Weaver, 137 Mo. 650.]

It is also a well settled rule of construction,. that where a statute contains grants of power, it is to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. [Lewis' Sutherland on Stat. Const., Sec. 508, and cases cited. See also Ex parte Martin, L. R. 4 Q. B. 212; People v. Hicks, 15 Barb. 160; Matter of Oath Before Justices, 12 Coke. 130; In re Dunn, 9 Mo. App. 255.] The latter case is very much like the one at bar.

If we apply this rule to the act under consideration, then there can be no reasonable doubt but what the Legislature intended to and did confer upon the board of equalization the power to commit witnesses for contempt, where they were duly subpoenaed, and refused to testify or produce the books and papers called for by the subpoena. In the case at bar, it stands conceded that the petitioner was duly subpoenaed, and notified to produce certain books. He appeared in response to the subpoena, but declined to testify or to produce the books. By that act he placed himself in contempt and the board properly committed him to the county jail

There are other questions of minor importance presented and discussed in the briefs, but they can in no way change the result we have reached.

We are, therefore, of the opinion that the petitioner is not unlawfully deprived of his liberty; and we are also of the opinion that he should be remanded to the custody of the sheriff of Greene county. It is so ordered.

All concur, except *Lamm, J.,* who dissents, and *Ferriss, J.,* who is absent.

VALLIANT, C. J.—In concurring in the very able opinion of my brother WOODSON, I deem it proper to say that I do not understand the opinion as holding that the board of equalization is a court, or that it derives its authority to commit for contempt on the theory that it is a court. Its work, as is well said in the opinion, is judicial in its character, as all official work that requires the taking of evidence and the pronouncing of a legal conclusion is judicial in its character. But the board of equalization is an arm of the Legislative Department of the State Government, and has as much authority to enforce obedience to its lawful orders as if it were an arm of the Judicial Department. As an arm of the Legislative Department the board has no authority to adjudge one guilty of criminal contempt, but it has authority to adjudge him guilty of civil contempt and enforce obedience to its lawful orders. In the one case it is punishment for past conduct, in the other it is coercion to enforce obedience. *Woodson, Graves, Kennish* and *Brown, JJ.,* concur.