STATE EX REL. ROBERT PEERS v. WILLIAM FITZGERALD.[1]

November 12, 1915.

Nos. 19,413—(18).

**City council — authority to punish witness for contempt.**

1. The constitutional and legislative provisions relative to home rule charters of villages and cities do not authorize a city to grant its city council the right to punish a witness called before it for contempt. Such power is not to be inferred but must be clearly granted either by the Constitution or by statute.

**Same.**

2. Even had the city possessed such power it clearly appears in this case that the invoices called for, and which the witness refused to produce, were not pertinent to a legitimate subject of investigation before the city council.

Upon the relation of Robert Peers the district court for St. Louis county granted its writ of *habeas corpus* directed to William Fitzgerald,

---

1 Reported in 154 N. W. 750.

court officer of the municipal court of the city of Virginia. Upon the hearing before Hughes, J., the writ was discharged and relator remanded to the custody of the officer. From the order discharging the writ and remanding relator, he appealed. Reversed.

*George F. Shea,* for appellant.

*Montague & Montague,* for respondent.

HOLT, J.

Relator was, by the city council of the city of Virginia, found guilty of contempt, for refusing to produce and submit to the council for inspection his invoices, showing the purchase of products used in the meat business carried on by him in the city. Failing to pay the fine imposed he was placed in respondent's custody. He sought liberty through a writ of *habeas corpus.* From the order discharging the writ and remanding him he appeals.

The city of Virginia is under a home rule charter which contains these provisions:

"SECTION 87. * * * The city council and any of its committees authorized by it so to do, shall have the power to compel the attendance of witnesses and the production of books, papers and other evidence at any of its meetings, or before such committee, and for that purpose may issue subpœnas or attachments in any case of inquiry or investigation, to be signed by its president or the chairman of such committee, as the case may be, which shall be served and executed by any officer or person authorized by law to serve subpœnas and other processes.

"SECTION 88. * * * If any witness shall refuse to testify to the facts within his knowledge, or to produce any books or papers in his possession, or under his control, the city council shall have the power to fine or commit him for contempt."

The council is empowered to license and regulate butcher shops and slaughter houses, to provide for inspection and prevent the offering or sale of unwholesome meats and fish, and to establish and regulate the location of markets and market houses. A resolution was duly adopted by the city council to investigate matters pertaining to the purchase, sale and handling of meats, fowl and fish, with a view to determine whether conditions were such as to require the city to establish a muni-

cipal slaughter house; whether meat dealers should be licensed; whether any pool or illegal combination had been formed to control the prices on meats and fish in the city; who were in such combination, if it exists, and what effect it has on prices and the qualities of meats, and how the prices on these products compare with the prices in other cities. Under subpœna *duces tecum* relator came before the council, pursuant to the resolution, was sworn, and gave testimony. However, while announcing a willingness to answer any proper question, he refused to produce his invoices showing the wholesale prices paid by his firm for meats during a certain month, being the documents called for by the subpœna. For this refusal he was adjudged guilty of contempt by the council and a fine of $20 imposed.

The relator claims that municipal corporations have not been granted the power to incorporate such a provision, as the above set out, in a home rule charter. It is conceded that the legislature has the power to require witnesses to attend and give pertinent testimony upon a subject legitimately before that body for investigation, and, in case of contumacy, to punish as for contempt. Anderson v. Dunn, 6 Wheat. 204, 5 L. ed. 242; Ex parte Lawrence, 116 Cal. 298, 48 Pac. 124; People v. Keeler, 99 N. Y. 463, 2 N. E. 615, 52 Am. Rep. 49; In re Davis, 58 Kan. 379, 49 Pac. 160; Ex parte Dalton, 44 Oh. St. 142, 5 N. E. 136, 58 Am. Rep. 800; Ex parte Parker, 74 S. C. 466, 55 S. E. 122, 114 Am. St. 1011, 7 Ann. Cas. 874. But the courts, upon *habeas corpus* or other proper proceeding, will examine into the matter and determine whether the conviction was lawful. People v. Keeler, supra; Kilbourn v. Thompson, 103 U. S. 168, 26 L. ed. 377. It is argued by the respondent that since the legislature possesses this power, a city has the right, under the Constitution, to adopt a home rule charter giving its city council the same power, its possession being as necessary to efficient performance of the functions of its legislative body as to that of the state. And further, it is claimed that the legislature, pursuant to section 36, art. 4, of the Constitution, by section 1345, G. S. 1913, has given to cities and villages full power to adopt "any scheme of municipal government not inconsistent with the Constitution, and may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions, as fully as the legislature might have done before

the adoption" of the constitutional amendment forbidding special legislation and that this confers the power to coerce obedience by the use of contempt proceedings the same as is employed by courts of record.

Under the common law in England a municipal corporation had no authority to punish for contempts unless Parliament had expressly granted the same. The well considered opinion in Whitcomb's Case, 120 Mass. 118, 21 Am. Rep. 502, holds that the bill of rights in the constitution of that commonwealth, essentially the same as ours, precludes the legislature from granting a city council the power to punish as for contempt. It is therein said: "The legislature may also provide for the punishment, upon indictment and trial in the courts of justice, of any person who, being duly summoned, refuses to appear and testify before any board or tribunal upon a matter which it is authorized by law to investigate or decide. But the legislature cannot delegate to or confer upon municipal boards or officers, that are not courts of justice, and whose proceedings are not an exercise of judicial power, the authority to imprison and punish, without right of appeal or trial by jury." On the other hand, the courts in Missouri have held that the power to punish a contumacious witness as for contempt is a necessary incident to the authority to call witnesses, and is lodged with every legislative body, administrative board, or officer clothed directly or indirectly with power to investigate or decide matters upon testimony. In re Dunn, 9 Mo. App. 255; In re Sanford, 236 Mo. 665, 139 S. W. 376.

Without determining which of these opposing views ought to be adopted, we may concede, for the purpose of this case, that by law administrative boards and officers, including the governing board or council of municipal corporations, may be invested with authority to punish a contumacious witness who refuses to respond to proper inquiries concerning a subject which such board, council or officer is required to act upon. But we do hold, in view of our constitutional guarantees and the trend of legislation, that such power is not to be implied or inferred. That the citizen shall not be deprived of his liberty without due process of law has always been a cherished idea of framers of constitutions and laws in this country. The legislature of this state has carefully defined what constitutes contempt of its own authority and limited the punishment it may inflict (sections 38, 39, G. S. 1913), and also undertaken to define

what shall constitute contempt of court, prescribe the procedure to be followed by the courts in adjudications upon contempts, and limit the punishment. When the legislature has been so careful by explicit statutory provisions to guard the liberties and rights of the citizen as against its own power and that of the courts in matters relating to contempt, we cannot conclude that villages and cities were intended to have free hand to vest the great coercive power to punish for contempt, so readily converted into an instrument of oppression, in its councils, or administrative boards or officers, ordinarily composed of or being persons of limited legal knowledge and experience. We also find statutes wherein the legislature has conferred the power to call witnesses and punish for contumacy, thus showing that this right to punish is not left to inference. See section 5136, G. S. 1913, in case of state fire marshal. It would almost seem that the legislature here had some doubt concerning the power, for in the next section is provided that the marshal, instead of himself meting out punishment upon a witness, may apply to the court to have it done. And in section 3236, G. S. 1913, the public examiner is given the powers possessed by the courts in the matter of securing testimony, thus conferring judicial authority to be exercised in the manner prescribed for courts. By sections 2293, 4020, 4184, G. S. 1913, the attorney general, the board of control, the railroad and warehouse commission are given express authority to subpœna and examine witnesses, nevertheless contumacy may not be passed upon or punished by the attorney general or the two chief administrative boards of the state, but must be referred to the courts. And we take it that the enforcement of the authority to obtain testimony conferred by such sections as 3942, 3907, 3911, and 9288, G. S. 1913, must go to the district court if there be contumacy. We are also of the opinion that no necessity exists for an inference of a power in municipal corporations to determine and punish as for contempt the refusal of a person to testify or produce private documents in investigations relating to municipal affairs. Where any body, board or officer of a village or city has the right to hear testimony, the right may be enforced under sections 8370 and 8373, G. S. 1913. City of Minneapolis v. Wilkin, 30 Minn. 140, 14 N. W. 581; Wolf v. State Board of Medical Examiners, 109 Minn. 360, 123 N. W. 1074. Grant that a city council may have express or implied authority to examine witnesses and inspect

documents, the enforcement thereof, through the aid of courts under the last cited sections, will safeguard the rights of the citizen against unlawful inquisitions, and at the same time give the municipality all legitimate aid in the performance of its proper governmental and administrative functions. Authority to punish for contempt should not be left to inference, but must be expressly granted. Noyes v. Byxbee, 45 Conn 382; Brown v. Davidson, 59 Iowa, 461; In re Davis, supra.

But, even could the correctness of the conclusion we have reached be questioned, it is entirely clear that the city council had no lawful right to demand that relator produce the invoices called for. It is not the function of city councils to procure evidence for the attorney general for prosecution of illegal combinations. Grant that municipal corporations have the power to license butchers, employ inspectors to prevent the sale of unwholesome meats, and regulate market places, we fail to see the connection between any of these matters and the price at which relator in the past had bought his wares. A city or village surely has no right to fix prices, or limit the profits of merchants engaged in lawful business. If the city of Virginia is to embark in the meat business it must do so as any private concern in like business. No private person desirous of engaging in the meat or slaughter business can by lawful means compel those already in the business to disclose the price at which their merchandise is bought or sold. Under such decisions as People v. Keeler, supra, Kilbourn v. Thompson, supra, Ex parte Conrades, 185 Mo. 411, 85 S. W. 160, the invoices of relator were not pertinent to any investigation which the city council could legitimately pursue.

Relator is unlawfully deprived of his liberty.

Order reversed.