## In Re CHARLES L. HOLMAN, Petitioner.

St. Louis Court of Appeals. Argued and Submitted January 16, 1917.
Opinion Filed February 6, 1917.

1. **EVIDENCE:** Judicial Notice: Charter of St. Louis. Section 21 of article 9 of the Constitution, which provides that all courts shall take judicial notice of the Charter of the city of St. Louis, doubtless applies to the new Charter, adopted at an election held on June 30, 1914, as well as to the Charter previously in force.

2. **HABEAS CORPUS:** Refusal to Testify Before Municipal Legislative Body: Scope of Inquiry. On *habeas corpus* to determine the legality of the detention of petitioner under an attachment issued by a municipal legislative body for refusal to testify before one of its committees, the inquiry is limited to the sole question of jurisdiction of such legislative body and its committee.

3. ———: ———: Presumption of Correct Conduct. In such case, the court will assume, in the absence of a showing to the contrary, that the questions which will be propounded by the committee will be within the scope of its authority and will not violate any constitutional right of petitioner.

4. MUNICIPAL CORPORATIONS: Powers of Legislative Body: Witnesses at Hearing. The legislative body of a municipality has power to make inquiry into matters concerning and in aid of proposed legislation within its jurisdiction, and may, in the exercise of such power, subpœna witness to testify before it, relative to the subject-matter of such inquiry.

5. ———: ———: ———: Attachment of Recalcitrant Witness. The legislative body of a municipality has power to issue an attachment for a witness who refuses to appear before it to testify concerning matters under investigation, relating to proposed legislation within its jurisdiction.

6. ———: Powers of Legislative Body: License Taxes: Witnesses at Hearings: Attachment. In view of the fact that section 1 of article 1 of the Charter of the city of St. Louis gives the board of aldermen power to license and regulate all persons, firms, corporation and associations engaged in any business, occupation, calling, profession or trade, and to impose a license tax upon any business, vocation, pursuit or calling, the board had jurisdiction to inquire into the manner and the cost of manufacturing gas by every producer in the city, the character and quality thereof, and the amount received from the sale thereof, to enable it to determine the propriety of proposed legislation levying a license tax on every person, partnership, association and corporation engaged in the business of manufacturing and vending gas in the city, and other proposed legislation referable to the police power, and, under section 8 of article 4 of the Charter, the board had authority to delegate to one of its committees the power to conduct such inquiry; so that, where the president of a corporation engaged in the business of manufacturing and vending gas in the city refused to appear before a committee which had been duly authorized by the board to conduct such an inquiry, in response to a subpœna commanding him to appear and testify in such proceeding, the board had power to issue an attachment for him.

7. ———: Refusal to Testify Before Legislative Body: Justification: License Taxes: Uniformity Clause of Constitution. On habeas corpus to determine the legality of the detention under such attachment, petitioner attempted to justify his refusal to appear before the committee on the ground that the board of aldermen had no jurisdiction to consider the proposed legislation, for the reason that there was no person, firm or corporation, other than the corporation of which he was president, engaged in the manufacturing and vending gas in the city, and the imposition of a tax

upon it, when no such tax was imposed upon any other manufacturer or merchant, would violate the Uniformity of Taxation Clause of the Constitution (section 3 of article 10). *Held,* that the one corporation that would be affected by the proposed legislation was a class in itself, and the proposed legislation was, therefore, not subject to the objection made, since the municipality has power to impose a license tax upon any one class of business, distinct and different from that imposed upon other classes; following City of Louis v. United Railways Company, 263 Mo. 387, and distinguishing Kansas City v. Grush, 151 Mo. 128 and State ex rel. v. Ashbrook, 154 Mo. 375.

8. ———: ———: ———: **Cumulative Evidence.** In such case, petitioner could not justify his refusal to appear before the committee on the ground that the board had in its possession documents containing the information sought from him, since such documents might not satisfactorily cover the matters upon which information was sought or the board might desire to test the correctness of the information contained therein.

9. ———: ———: ———: **Examination of Private Business.** In such case, petitioner could not justify his refusal to appear before the committee on the ground that, if he could be required to appear and testify, every citizen engaged in purely private business could be subjected to like proceedings, since the committee before whom petitioner was subpoenaed to appear was not conducting an inquiry which was aimed at the conduct of a private business.

10. ———: ———: ———: **License Taxes: Double Taxation.** In such case, the contention, that petitioner was justified in refusing to appear before the committee on the ground that the board of aldermen had no jurisdiction to consider the proposed legislation because the only corporation which would be affected was already paying a license tax and the proposed legislation would, therefore, be void as imposing double taxation, was untenable, since the city has power to increase or decrease license taxes, and the proposed legislation, even if it levied taxes in a larger amount, would not impose double taxes, but would merely increase existing taxes.

11. ———: ———: ———: **License Taxes: Powers of Local and State Public Service Commission.** In such case, petitioner could not justify his refusal to appear before the committee on the ground that the subject-matter of the inquiry was within the exclusive jurisdiction of the local board of public utilities, under section 10 of article 13 of the Charter, and the State Public Service Commission, under sections 67 to 85 of the Public Service Commission Act (Laws of 1913, p. 556), since the board of aldermen is given the power to levy license taxes, and nothing in the Charter or Act cited excludes the right of the board of aldermen to make such inquiry as may be necessary to enable it to discharge this function.

12. ———: **Validity of Proposed Ordinance: Function of Courts.** It is not the function of the courts to determine whether a proposed municipal ordinance will be valid or invalid, if passed; but their power extends no further than to determine the validity of ordinances after their enactment.

HABEAS CORPUS. ORIGINAL PROCEEDING.

WRIT QUASHED.

*I. H. & J. S. Lionberger* for petitioner.

(1) The city has no power to levy a license tax in proportion to the gross receipts of a gas company. Const. of Mo., art. 10, secs. 1, 4 and 5; Art. 9, secs. 16-25; Art. 10, sec. 11; R. S. 1909, secs. 11384 and 11551; State v. Railroad Co., 196 Mo. 523; Cumberland Tel. Co. v. Hopkins, 90 S. W. 594; Railroad v. Hoboken, 41 N. J. Law 79. (2) The city has no power to levy, in addition to the taxes now paid, a license tax on the Laclede Gas Light Company alone which is not levied on all other corporations making a like use of the streets. Const. of Mo., art. 10, sec. 3; R. S. 1909, secs. 9857, 11340, 11617, 11646; Kansas City v. Grush, 151 Mo. 134, 135; Wyatt v. Ashbrook, 154 Mo. 375; Lincoln v. Gas Co., 158 N. W. 962, 182 Fed. Rep. 926. (3) The five per cent now paid upon gross receipts by the electric companies of the city using its streets is not a license tax, but a contract obligation. Betz v. Kansas City, 118 Mo. App. 570; St. Louis v. Laclede G. L. Co., 155 Mo. 1. (4) The city cannot levy a license tax on the Laclede Gas Light Company alone which is not levied on other manufacturers and merchants. Const. of Mo., art. 10, sec. 3; R. S. 1909, secs. 11340, 9857, 11617, 11646; Kansas City v. Grush, 151 Mo. 134; Wyatt v. Ashbrook, 154 Mo. 375. (5) The Board of Aldermen, being the legislative department of the city, cannot value property for the purpose of taxation. Const. of Mo., art. 3; Art. 10, sec. 25; R. S. 1909, secs. 11384, 11551, 11646; Charter of St. Louis, art. 15, secs. 8 and 4. (6) The Board of Aldermen, being incompetent for the reasons aforesaid either to impose the tax contemplated or to value the

property or business of the Laclede Gas Light Company for such purpose, is without jurisdiction to institute the investigation contemplated. Charter of St. Louis, art. 4, sec. 8; Kilburn v. Thompson, 103 U. S. 168; Miller v. Tayntor, 170 N. Y. App. Div. 126. (7) The resolution under which the investigation is proposed to be conducted is not an act or ordinance of the Board of Aldermen and cannot confer authority upon any committee to do what is proposed. City Charter, art. 4, sec. 23; Saxon v. Beach, 50 Mo. 488; Girardeau v. Tongue, 30 App. 551-558; Trenton v. Coyle, 107 Mo. 195; City Charter, art 13, sec. 10. (8) Under the Charter of the city, the Board of Aldermen has no power or jurisdiction to conduct an investigation into the rates, service, affairs, etc., of a public utility, because by such Charter authority to conduct such investigations is committed to the department of public utilities. Charter of St. Louis, art. 13, sec. 10; Ruschenberg v. So. Ry. Co., 161 Mo. 71; State v. Butler, 178 Mo. 272; Miller v. Tayntor, 170 N. Y. App. Div. 126; Kilburn v. Thompson, 103 U. S. 168. (9) The Board of Aldermen has no general jurisdiction to conduct a searchlight investigation into private or corporate affairs merely because it is clothed with the police power or may propose to enact some sort of legislation. All of the information which it pretends to seek is now afforded by or may be procured through the instrumentalities now clothed by law with general supervision and control over all public utilities of the city. City Charter, art. 13, sec. 10; Acts 1913, sec. 69, p. 603; State v. Pub. Serv. Com., 259 Mo. 704; Miller v. Tayntor, 170 N. Y. App. Div. 126. (10) The search and seizure undertaken by the committee is unreasonable within the meaning of the Constitution of the State. Const. of Mo., art. 2, secs. 4, 10, 11, 31; Kilbourn v. Thompson, 103 U. S. 168; Boyd v. U. S.. 116 U. S. 616; Adams v. U. S., 192 U. S. 588; Weeks v. U. S., 232 U. S. 390; Entick v. Carrington, 19 How. St. Trials, 1029; Ex parte Brown, 72 Mo. 94; State v. Tobacco Co., 177 Mo. 42; Ex parte Conrades, 185 Mo. 432; Re Sandford, 236 Mo. 665.

*Charles H. Daues* for respondent.

(1) The legislative power of the city is vested in the Board of Aldermen. Charter City of St. Louis, art. 4, sec. 1. (2) The Board of Aldermen has power to make investigations and may delegate such power to committees and may subpoena and compel the attendance of witnesses, etc. Charter City of St. Louis, art. 4, sec. 8; Ordinance No. 27957; In re Dunn, 9 Mo. App. 255; In re Conrades, 112 Mo. App. 21. (3) This being a *habeas corpus* proceeding the inquiry is limited to the single question of the jurisdiction of the Board of Aldermen. Henry v. Henkel, 235 U. S. 219; Henry v. Henkel, 207 Fed., 805. (4) The Board of Aldermen possesses the power and may delegate such power to its committees to summon witnesses before it and to compel their attendance with the production of books in order that the Board of Aldermen may acquire a certain knowledge of facts so that it may properly perform its legislative duties. Briggs v. Mackellor, 2 Abb. Prac. Vol. 2, p. 30; People ex. rel. McDonald v. Keeler, 99 N. Y. 463; Wilckens v. Willet, 1 Keyes Reports, p. 521; Satterlee v. Mathewson, 27 U. S. (Pet.) 380; In re Dunn, 9 Mo. App. 255; 2 McQuillin on Mun. Corps, 28 Cyc. p. 342; In re Conrades, 112 Mo. App. 21; In re Conrades, 185 Mo. 411; I. C. C. v. Brimson, 154 U. S. 447; 155 U. S. 9. (5) Nothing in the Constitution of the United States forbids the legislature of a city to exercise judicial functions. State v. Orleans, Civil District Judges, 35 La. Ann. 1075; Briggs v. Matsell, 2 Abb. Prac. 156; In re Van Tine, 12 How. Prac. 507; Van Tine v. Nims, 3 Abb. Prac. 39; People v. Van Tassell, 6 Hun. 444; In re Cole, 38 N. Y. Supp. 955; In re Yard, 10 Pa. Co. Ct. R. 41; Collins v. Lean, 68 Cal., 284, 9 Pac. 173; Commonwealth v. Watts, 84 Ky. 537; Guillote v. New Orleans, 12 La. Ann. 432; Weimer v. Bunbury, 30 Mich. 201. (6) The city may impose a license tax for revenue. Charter City of St. Louis, art. 1, sec. 1, subsecs. 23-24, and art. 20. (7) State and city may collect an *ad valorem* tax upon pro-

perty used in the exercise of a privilege and at the same time a license tax upon that privilege. St. Joseph v. Ernest, 94 Mo. 367; St. Louis v. Green, 70 Mo. 562; Amer. Union Express Co. v. St. Joseph, 66 Mo. 675; Aurora v. McGannon, 138 Mo. 45. (8) License taxes graduated by the amount of earnings have frequently been sustained and commended. Clark v. Titusville, 184 U. S. 329; Society for Savings v. Coite, 6 Wall. 594; Maine v. Grand Trunk Ry. Co., 142 U. S. 217, 228; Home Insurance Co. v. New York, 134 U. S. 594; Mich. Central Ry. Co. v. Powers, 201 U. S. 245; Aurora v. McGannon, 138 Mo. 38; Brown-Foreman Co. v. Kentucky, 217 U. S. 563; Texas Company v. Stephens, 100 Tex. 268; Southwestern Oil Co. v. State of Texas, 217 U. S. 120. (9) The tax contemplated is not a general tax upon property. Even if it were an income tax, nevertheless the tax will not be a general tax upon property. American Union Express Co. v. St. Joseph, 66 Mo. 675; St. Joseph v. Ernst, 95 Mo. 367; Atlanta National Bldg. & Assn. Co. v. Stewart, 109 Ga. 80, 89; Gordon v. Louisville, 138 Ky. 442; Gulf Port Ry. Co. v. Adams, 114 La. 529, 38; Nebraska Tel. Co. v. Lincoln, 82 Neb. 59; Lincoln Traction Co. v. Lincoln, 84 Neb. 327. (10) The legislation contemplated does not violate article 10, section 3, of the Missouri Constitution, requiring uniformity of taxation. City of St. Louis v. United Ry. Co., 210 U. S. 266; Hannah v. State Railway Co., 81 Mo. App. 78-82; City of St. Louis v. Bowler, 94 Mo. 630-634; Savannah, etc., Ry. v. City of Savannah, 198 U. S. 392; People ex rel. v. New York Board of Tax Commissioners, 199 U. S. 1; Aurora v. McGannon, 138 Mo. 38-47; Cooley on Taxation (2 Ed.), p. 170; City v. Green, 70 Mo. 562; Glasgow v. Rowse, 43 Mo. 479. (11) The general provisions of the State law do not in anywise impair the charter powers of the city of St. Louis to levy license taxes. City of St. Louis v. United Railways Co., 210 U. S. 266; State ex rel. v. Lindell Railway, 151 Mo. 168. (12) It is only required by the Constitution that all taxes shall be levied equally on all persons or objects in the same class; not that the amount shall be

the same, but that the method of arriving at that amount shall be the same and shall be equally applicable to all persons within the same class. Amer. Union Express Co. v. St. Joseph, 66 Mo. 675; State ex rel. v. Henderson, 160 Mo. 190; Kansas City v. Corrigan, 18 Mo. App. 215; State v. Sternberg, 69 Mo. 289; Clark v. Titusville, 184 U. S. 329, and all cases cited point III, B, supra; Newport Railway v. Newport News, 100 Va. 157, 161; Met. Street Railway v. New York, 199 U. S. 1; Met. Theatre v. Chicago, 246 Ill. 20. (13) A different and distinct license tax may be imposed upon any one class of business. (14) The general taxing laws of the State, including the Act of 1901, page 232, being a tax on franchises, do not in any way interfere with the city's power under the charter to levy license taxes. These laws have no reference to license taxes levied by the city. St. Louis v. United Railways Co., 210 U. S. 266; Gray on Limitation of Taxing Power, sec. 1373; St. Louis v. Weitzel, 130 Mo. 601; Aurora v. McGannon, 138 Mo. 38, 46; Kansas City v. Richardson, 19 Mo. App. 450, 458-9; Springfield v. Smith, 138 Mo. 645; Adams Express Co. v. Ohio, 165 U. S. 194; S. C. 166 U. S. 185; Brooklyn City R. R. Co. v. New York, 199 U. S. 48; South Covington & Cincinnati St. R. R. Co. v. Bellvue, 105 Ky. 283; 57 L. R. A. 50, 60; State Tax on Railroad Gross Receipts, 82 U. S. 294. (15) The city may by ordinance enact reasonable police regulations and such regulations cannot be disturbed by the Public Service Commission. City may legislate with reference to public utilities, notwithstanding the Public Service Commission Act of 1913. Charter City of St. Louis, art. 1, sub-secs. 33, 35; Civic League v. Public Service Commission, No. 969; City of Benwood v. Public Service Commission, L. R. A. 1915 C, 261; Murphy v. Mo. Pac. Ry. Co., 2 Mo. P. S. C., p. 471.

STATEMENT.—The petitioner, Charles L. Holman, complaining that he is unlawfully deprived of his liberty by one William C. Matthews, under a certain warrant or commitment issued by and under authority of

the Board of Aldermen of the city of St. Louis (a copy of which warrant is attached to the petition), avers that in and by a certain subpoena, signed by the Honorable Nathan Hall, he is summoned to appear before a committee of the Board of Aldermen of the city of St. Louis, at the City Hall in said city, on December 1, 1916, then and there to testify to the truth with respect to certain matters, more particularly set out in the subpoena (a copy of which is attached), and that the petitioner has been advised by counsel that he could not be required to testify with respect to matters therein set out and therefore refused to do so; that thereupon the commitment above referred to was issued and his body taken into custody by respondent Matthews. Averring that the commitment and arrest were unlawful, illegal and without warrant of any law, the petitioner asks that the writ of *habeas corpus* issue by our court, requiring that his liberty be restored to him, or cause to the contrary shown.

The writ of *habeas corpus* was accordingly issued.

Upon the return day the cause was set for hearing before the court, further time being granted for making the return. Respondent Matthews thereafter and in due time made his return.

That return sets up that respondent is the duly elected sergeant-at-arms of the Board of Aldermen of the city of St. Louis and was such at the times thereafter mentioned. It sets up the preamble and resolution of the Board, hereafter set out, providing for the appointment of a committee and that they were adopted by unanimous vote of the Board; sets out the powers of the city and of the Board of Aldermen; also an ordinance of the city covering the powers of the Board; the appointment of the committee under a resolution of the Board; that the committee was organized and proceeding under authority and direction of the Board, and for the purposes in the resolution set out, and had subpoenaed petitioner; sets out the subpoena, signed by the vice-president of the Board; the acknowledgment of service of it upon him by petitioner; his refusal to ap-

pear; the report of the committee showing service of the subpoena upon petitioner, and his refusal to appear and testify before the committee, and prays for an attachment of petitioner for his failure and refusal; also sets out the writ of attachment issued by the president of the Board and recites the arrest and attachment of petitioner thereunder by respondent as sergeant-at-arms of the Board; that petitioner is president of the Laclede Gas Light Company, which company, it is averred, is a corporation engaged in the business of manufacturing and vending gas for lighting, heating and cooking purposes in the city of St. Louis; that it "has caused to be laid in the streets of St. Louis pipes, ducts and conduits, and in the carrying out of its business contemplates a further use of the streets in this and other respects; that the said Charles L. Holman is a competent, material and necessary witness before said special committee to properly make its investigation as authorized by said resolution, and it is necessary to obtain certain information from the said Charles L. Holman to be laid before the Board of Aldermen of the city of St. Louis to aid it in legislating upon certain subjects properly within the scope of the legislative branch of the city of St. Louis to the better interest and the general welfare of the city, and its inhabitants."

Upon the coming in of the return, the petitioner, admitting that the Laclede Gas Light Company is a corporation, organized and existing under two Acts of the Legislature of this State, one entitled, "An Act Entitled an Act to Incorporate the Laclede Gas Light Company," approved March 2, 1857 (See Laws 1857, p. 598, regular session), the other amendatory thereto entitled, "An Act to Amend an Act to Incorporate the Laclede Gas Light Company," approved March 26, 1868 (see Laws 1868, p. 187), avers that by these Acts the Laclede Gas Light Company is authorized to have and enjoy the privilege and right of lighting the city of St. Louis and to make and vend gas, gas-lights and fixtures, and any substance or material that may now or hereafter be used as a substitute therefor, and to that end estab-

lish and lay down in the corporate limits of said city all pipes, fixtures or other thing properly required in order to do the same, and all other powers necessary to execute and carry out the privileges granted to the company; that this company was chartered and organized and is now engaged in the business of making and vending gas for light, heat and power throughout the city, and in the exercise of the privileges so conferred, *"and is the only person or corporation engaged in such business within the limits of said city—but it possesses and claims no exclusive right to engage in said business."* It is further set out that that company now pays all taxes levied for all purposes under legislative authority, including a personal property tax, a real property tax, a merchants' and manufacturers' license tax and a franchise tax, and is not and has not been delinquent in the payment of these. In an exhibit accompanying the answer, is set out in detail the amount of manufacturers' and corporation license taxes, as also those assessed for local and general purposes upon the corporation for the year 1915. The answer further admits that the petitioner is the president of that company; that he was summoned and refused to appear and testify as alleged in the return of the respondent; that he is without knowledge or information with respect to the other matters and things set forth in the return, "nevertheless, petitioner says that if said matters and things be true, they do not justify the arrest of petitioner nor afford warrant in law for his detention because:

"1. The Board of Aldermen of the city of St. Louis has no jurisdiction under the Charter of said city to levy the gross receipt tax proposed, and its committee has no right nor power either under said Charter or the resolution adopted to investigate the affairs of said company for the purposes set forth in said resolution or in the return of the respondent.

"2. The Board of Aldermen has no power nor jurisdiction under the Constitution and laws of the State to impose such tax or to make such investigation or com-

pel the attendance and testimony of the petitioner in the course of such investigation for the purposes aforesaid.

. "Wherefore, the petitioner says that the return of the respondent and the matters and things therein set forth do not authorize, justify, nor excuse the arrest of the petitioner; that such arrest was unlawful, and that the petitioner is restrained of his liberty without warrant of law. He therefore asks that he be discharged from custody and that his costs be taxed against the respondent."

* The cause was heard before our court on these pleadings, treating the pleading of petitioner as a demurrer to the return.

The city of St. Louis, acting under the provisions of section 22, article 9, of the Constitution of this State, by vote of the electors of the city, at an election held June 30, 1914, adopted a revised Charter, which, under the same section of the Constitution, went into effect sixty days thereafter—that is to say, August 29, 1914. By section 21 of the same article 9 of our Constitution, it is provided that after the adoption and depositing in the proper offices of the State and city or county, all courts should take judicial notice thereof. So our Supreme Court has held in several cases—among others, City of St. Louis v. Lang et al., 131 Mo. 412, l. c. 420, 33 S. W. 54. It is true that this provision found in section 21, article 9, of the Constitution, directly refers to the original Charter, but we have no doubt that it is as applicable to the revised Charter as to the old one, and counsel for the respective parties have argued and submitted the case on the theory that the city is now acting under this revision of its Charter.

By section 1, of article 4, of that Charter, the legislative power of the city, subject to the limitations in the Charter, is vested in a Board of Aldermen, consisting of a president and twenty-eight members.

By thirty-five subdivisions of section 1, article 1, of the Charter, the powers of the inhabitants of the city as a body corporate are specifically set out; subdivi-

sion 2 giving power to adopt such classifications of the subjects and objects of taxation as may not be contrary to law; subdivision 23 giving power to license and regulate all persons, firms, corporations and associations engaged in any business, occupation, calling, profession or trade; subdivision 24 giving power to impose a license tax upon any business, vocation, pursuit, calling, animal or thing; subdivision 25 giving power to define and prohibit, abate, suppress and prevent or license and regulate all acts, practices, conduct, business, occupations, callings, trades, uses of property and all other things whatsoever detrimental or liable to be detrimental to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the city and all nuisances and causes thereof. By subdivision 33 power is given to do all things whatsoever expedient for promoting or maintaining the comfort, taxation, morals, peace, government, health, welfare, trade, commerce or manufacture of the city or its inhabitants; and by subdivision 35 the city is authorized to exercise all powers granted or not prohibited to it by law, or which it would be competent for the Charter to enumerate.

Section 2 of the same article provides that the enumeration of particular powers in the Charter is not exclusive of others or restrictive of general words or phrases granting powers, "nor shall a grant or failure to grant powers in this article impair a power granted in any other part of this Charter; and whether powers, objects, or purposes, are expressed conjunctively or disjunctively they shall be construed so as to permit the city to exercise freely any one or more such powers as to any one or more such objects or any one or more such purposes."

By section 8 of this same article 4 of the Charter, it is provided, among other things, that the Board of Aldermen "shall have power, and may delegate it to any committee, to subpoena witnesses and order the production of books and papers relating to any subject within its jurisdiction; to call upon its own officer or the city marshall to execute its process; and to arrest

and punish by fine or imprisonment, or both, any person refusing to obey such subpoena or order. . . . Its presiding officer or the chairman of any committee may administer oaths to witnesses.''

The Board of Aldermen, by section 12, of ordinance No. 27,957, approved April 8, 1915, as. set out in the return, practically repeated this charter provision, ordaining that writs of subpoena and of subpoena *duces tecum* shall be signed by the presiding officer, or, in case of his absence or inability to act, by the acting presiding officer of the Board of Aldermen and be attested by the clerk of the Board, and that every such writ shall be served and the return thereof made by the sergeant-at-arms or the city marshal to the chairman of the committee in the manner and with like effect as such writs, issued from the circuit court, are served and returned by the sheriff. By section 13 of that ordinance, it is provided that in case any person named in such writ, and who has been personally served therewith, shall fail to appear before the committee at the time and place named in the writ, the committee shall have authority to issue a writ of attachment against the body of such person, to be signed as writs of subpoena are required to be signed as in the above section 12 provided, and to be executed and returned to the chairman of the committee by the sergeant-at-arms, or the city marshal, in like manner, and with like effect, as such writs of attachment, issued by the circuit court, are executed and returned by the sheriff.

Acting under these provisions of the Charter and the ordinance, the Board of Aldermen, at a regular meeting, held on November 3, 1916, adopted a resolution which recited, among other things:

''Whereas, the Board of Aldermen *is considering the matter of legislating on the subject of a levy and collection of a reasonable annual license tax by the City of St. Louis from every person, co-partnership, association and corporation engaged in the business of making and vending gas for artificial lighting and heating and distributing the same by means of pipes or conduits laid*

*in the public streets, highways and alleys within the city,* and

"Whereas, *in considering said subject of legislation* it is necessary, *in order to determine the amount of such license tax to be so levied and collected,* that an examination be made of the cost of manufacturing gas for artificial lighting and heating as now manufactured by those engaged in the business of making and vending gas and distributing same in the city of St. Louis, and that also an investigation be made to determine the quality of such gas now so furnished, the method and manner of manufacturing and cost of such manufacturing and cost of distributing the same be made, and

"Whereas, it is the desire of the Board of Aldermen to thoroughly investigate the cost of production and manufacture of artificial gas for lighting and heating in the city of St. Louis, and the quality, kind and character of the gas now furnished and the gross receipts from such sale of gas and service furnished by any person or corporation vending gas in the city of St. Louis, either by direct license from the State of Missouri or by authority of ordinance of the city of St. Louis, *so that proper and needful legislation may be enacted fixing an annual license tax in a proper and equitable amount on every such person, co-partnership, association or corporation doing such gas business in St. Louis, and to enact other authorized and valid legislation touching the premises;*

"Now, Therefore, Be It Resolved, by the Board of Aldermen, as follows:

"That the Acting President appoint a committee consisting of five members of the Board of Aldermen, to be authorized, and which committee when appointed is hereby authorized and directed *to investigate the cost of production and manufacture and the method of manufacturing and producing artificial light and heating gas by persons,* co-partnerships, associations *and corporations now engaged in the business of making and vending, distributing, supplying and furnishing gas for artificial lighting and heating to consumers by means of*

*pipes, ducts or conduits laid or made in the public streets,* highways and alleys *within the city of St. Louis,* whether such business is conducted under license granted directly by the State of Missouri through the State Legislature, or by ordinance of the city of St. Louis; *to investigate the character and quality, the lighting and heating power, of the gas so sold or distributed* for light and heat in the manner above set out, *so that a correct determination may be made by the Board of Aldermen of the cost of the production and manufacture, and the cost of distribution of such gas* and *the cost of such service to the users of same; to investigate the gross receipts* of such business of all engaged in such business for any given time; *to determine the amount of such gross receipts in order that an equitable and proper per cent. may be arrived at to be fixed as an annual license tax on such business;* and to investigate the manner and method of manufacturing and vending and distributing gas as aforesaid, and the cost of such production; *to determine the propriety and equity of the enactment of contemplated valid and authorized legislation by the Board of Aldermen fixing such license tax.* And to investigate fully such affairs of said business, to gather fully all information necessary to enact such other and further legislation touching the use of the streets, highways and alleys of the city by those engaged in the business of vending and distributing artificial gas for light and heat *and necessary to enact such other and further legislation properly referable to the police power vested in the city of St. Louis touching the conduct of such business in the city of St. Louis.*"

The resolution further provided that in the conduct of such investigation the committee shall have power to subpoena witnesses and compel the attendance of such witnesses properly subpoenaed at the hearings held by the committee, and also power to issue subpoenas *duces tecum* for the purpose of compelling the production of papers and books by any person, copartnership, association or corporation and the officers and agents thereof engaged in the business of manufacturing, producing or

selling artificial gas, with power to examine all said papers and books for the purpose of determining the cost of the manufacture and production of gas and furnishing the same to the users thereof, the quality and character and heating and lighting power of all gas furnished by such utilities and the income, profits and earnings of such manufacturers, producers and vendors of gas *for the purpose above set forth*, with power to any member of the committee to administer oaths and examine witnesses in relation to the matters in the resolution set out, and that subpoenas so issued shall be served by the sergeant-at-arms of the Board of Aldermen, or the city marshal, and the committee shall have power to cause the arrest upon attachment of any person refusing to obey any lawful writ issued by the committee and power to punish by fine or imprisonment or both any persons refusing to appear under any such subpoena, or to obey the command of any such subpoena issued by the committee by refusing to answer questions lawfully propounded or to comply with any lawful order of the committee. And in conclusion the resolution provides that the committee, *having fully investigated the matter set out in the resolution, is directed to fully report its actions and recommendations to the Board of Aldermen.* (All italics ours).

This preamble and resolution was adopted by unanimous vote of all the members of the Board of Aldermen (twenty-eight), there being at the time no president, the vice-president acting, but a president subsequently being elected, qualifying and officiating.

The subpoena issued by the committee, running in the name of the State of Missouri, commands petitioner, Charles L. Holman, to appear before the special committee at a place, day and hour named, then and there to testify and the truth to say "in regard to the matters pending before said committee, in the investigation of the cost of the manufacture and production of artificial gas for lighting, heating and cooking purposes in the city of St. Louis, the quality of the gas furnished, and all other matters properly within the jurisdiction of said

committee, in accordance with the resolution under which said committee was appointed," giving the date of the adoption of that resolution by the Board of Aldermen and the names of the committee. The subpoena is signed by the vice-president of the Board of Aldermen, attested by the assistant secretary. Service of the subpoena was accepted by petitioner. Thereupon the committee reported to the Board of Aldermen the issue of the subpoena and the failure of the petitioner to obey it and to appear and testify before the committee, and the report sets out that acting under ordinance No. 27,957, before referred to, the committee acquaints the Board of Aldermen of this failure and refusal, and asks the Board to cause to be issued and served an attachment for the body of Charles L. Holman, requiring him to appear before the committee on a day, hour and place named to answer the subpoena and fully testify in the matters pending before the committee.

By unanimous vote of the Board, then composed of the president and twenty-eight members, a writ of attachment was issued, directed to the sergeant-at-arms of the Board of Aldermen, commanding him to attach the body of petitioner, and for Charles L. Holman to appear and testify before the committee. This writ of attachment was signed by the president of the Board of Aldermen, attested by its clerk.

REYNOLDS, P. J., (after stating the facts).— There are ten points made by learned counsel for petitioner: First, that the city of St. Louis has no power to levy a license tax in proportion to the gross receipts of a gas company. Second, the city has no power to levy, in addition to taxes now paid, a license tax on the Laclede Gas Light Company alone, which is not levied on all other corporations making a like use of the streets. Third, that the five per cent. now paid upon gross receipts "by the *electric companies of the city using its streets,*" (italics ours) is not a license tax but a contract obligation. Fourth, that the city cannot levy a license tax on the Laclede Gas Light Company alone

which is not levied on other manufacturers and merchants. Fifth, that the Board of Aldermen, being the legislative department of the city, cannot value property for the purpose of taxation. Sixth, the Board of Aldermen being incompetent for the reasons above stated either to impose the tax contemplated or to value the property or business of the Laclede Gas Light Company for such purpose, is without jurisdiction to institute the investigation contemplated. Seventh, the resolution under which the investigation is proposed to be conducted is not an act or ordinance of the Board of Aldermen and cannot confer authority upon any committee to do what is proposed. Eighth, under the Charter of the city the Board of Aldermen has no power or jurisdiction to conduct an investigation into the rates, service, affairs, etc., of a public utility because by such Charter authority to conduct such investigation is committed to the department of public utilities. Ninth, "the Board of Aldermen has no general jurisdiction to conduct a searchlight investigation into private or corporate affairs merely because it is clothed with the police power or may propose to enact some sort of legislation. All the information which it pretends to seek is now afforded by or may be procured through the instrumentalities now clothed by law with general supervision and control over all public utilities of the city." Tenth, and finally, the search and seizure undertaken by the committee is unreasonable within the meaning of the Constitution of the State.

We will not undertake to follow learned counsel for the petitioner in their elaborate and learned argument in support of these various propositions. In our view of this case, the greater part of them are not here involved. This case is a proceeding under the provisions of the Constitution and statutes relating to *habeas corpus,* and in such a case our inquiry is limited to the single question of the jurisdiction of the Board of Aldermen of the city of St. Louis, and of its committee [Henry v. Henkel, 235 U. S. 219.]

The charter provisions which we have set out very fully are the measure and scope both of that jurisdiction and of the power of the city and its legislative body, the Board of Aldermen,. and the preamble and resolution and ordinance referred to fully set out the purpose of the inquiry, as well as the authority conferred upon the committee.

Our court, in In re Conrades, 112 Mo. App. 21, 85 S. W. 150, had before it a case in which the petitioner, there arrested under a warrant issued by authority of the House of Delegates for failure to obey a subpoena commanding him to appear and testify before a committee of the House, challenged the power of the committee to compel his attendance and to give testimony before it, principally upon the ground that the committee was proceeding outside of the powers conferred on it by the resolution of the House of Delegates, in undertaking to compel the petitioner to produce the papers and books of a private manufacturing corporation, of which he was an officer. Judge Goode, who wrote the opinion of our court, that opinion delivered in 1904, has so thoroughly compiled the authorities up to that date relative to the powers of the Municipal Assembly, or one branch of it, to enter into investigations of matters concerning which it was proposed to legislate, that it would be a work of supererogation for us to repeat or even give a resume of them here. We refer to that opinion for these authorities as then applicable to the powers of the Municipal Assembly. That Municipal Assembly, as created under our old Charter, passed out of existence, and as will be seen by reference to section 1 of article 4 of our present Charter, which we have set out in full, the legislative power of the city, subject to the limitations of the Charter, is now vested in the Board of Aldermen. We have also set out the powers of the city as prescribed and defined by its Charter.

As demonstrated by our court, speaking through Judge Goode in In re Conrades, supra, the power of the

city to make inquiry of matters within its jurisdiction and in aid of proposed legislation, cannot be questioned.

On the dissent of one of the judges of this court, the Conrades case was certified to the Supreme Court and the decision of the latter is reported Ex parte Conrades, 185 Mo. 411, 85 S. W. 160. There the Supreme Court held (l. c. 429) that in the view of the case which that court took, "it is sufficient at this time to say, that upon the face of the return filed by respondent herein, it is shown that the petitioner was unlawfully restrained of his liberty, *since the committee appointed by the House had no authority, under and by virtue of the resolutions pleaded* (italics ours), to compel the production for inspection and examination of the private books and papers of a private business corporation of the city." It is there further said, that in so determining, many of the questions raised and discussed by counsel (and it might also have said, in the opinion of Judge Goode, above referred to), became unnecessary for consideration. That is to say, it passed all the other questions in the case without specifically determining them. Most certainly it did not disapprove of any of them. On the contrary, the whole spirit of the decision of the Supreme Court tends to sustain the view expressed for our court by Judge Goode, as to the power of the Municipal Assembly to inquire into matters on which it proposed to legislate. An examination of the cases and authorities quoted and cited by Judge Goode shows that his conclusion as to the powers of a body, such as the Municipal Assembly, or now, such as the present Board of Aldermen, to examine and inquire into matters concerning which it proposes to legislate, is fully sustained throughout the country. We know and are referred to no opinions later than 1904, when our court decided the Conrades case, which in any way disturb or overturn the law as there announced by Judge Goode, speaking for our court.

See, also, In re Dunn, 9 Mo. App. 255, where the same subject is ably discussed by Judge Lewis then of our court.

A learned discussion of the power of a board of equalization to compel the attendance of a witness and elicit testimony, will be found in In re Sanford, 236 Mo. 665, 139 S. W. 376.

In the Conrades case the resolution appointing the committee and authorizing it to examine persons and compel the production of books and papers empowered the committee *"to fully and carefully investigate the books, records and accounts in the several departments of the city, wherein returns are made of taxes."* (Italics ours). Of this our Supreme Court said (l. c. 430):

"You will search in vain to find in this resolution a direction or a command by the House, to its committee appointed (either in direct words employed, or by any fair inference that may be drawn therefrom), to investigate the private affairs of any private person, or class of persons, or corporations. All the power the committee herein had was such as it derived from the above resolution. That was its charter of authority, its delegation of power, the extent of and the limitations upon its duties; and so the question of the power and authority of the House of Delegates, in the matter of investigations of the character in question, so much discussed by counsel, is of no concern now, since the petitioner here is held for contempt for his refusal to obey the orders of the committee, and not those of the House of Delegates. If by the direct terms of this resolution, or from the reasonable inferences that flow from them, the committee was not empowered to investigate into the private affairs of business corporations of the city (such as the one petitioner controlled and had the management of), then whether or not the House of Delegates had or had not authority to authorize such an investigation, or whether the House may or may not have had the authority to itself have conducted such an examination, is not involved here, and we must deal now alone with the committee, and consider of its authority and power in the premises under the resolution by which it derived its birth."

The court accordingly held that, no matter what object may have been set out in the preamble, the power given the committee by the resolution itself was limited to the examination into the books, records and accounts in the several departments of the city wherein returns are made of taxes. It is further there said by our Supreme Court (l. c. 432):

"The authority to send for persons and papers and to issue subpoenas and *subpoenas duces tecum,* implies at most, only the right to compel the attendance of the witness, and the production of books and papers in his possession, necessary to a lawful inquiry, within the authority of the acting body that may be germane and pertinent to the subject of investigation. Limited in its delegated authority to the particular duty of investigating the books, etc., of the departments of the city wherein returns are made of taxes, the committee exceeded that authority when it sought to compel the petitioner to give testimony, or to produce books and papers for its inspection, that in the very nature of things could not be considered pertinent or germane to its work in hand, or to the delusive pretense, suggested by counsel, of gathering information for remedial legislation in the contemplation of the House of Delegates."

Our court had held in In re Conrades, supra (l. c. 27), that, "Giving a fair interpretation to the resolution, the intention of the house was to have the matter of the assessment and collection of personal and license taxes investigated with a view to adopting legislative measures to secure more satisfactory results in collecting the revenues of the city," and so held that by necessary implication the committee, under the resolution, could go into an examination of the books of private corporations. This, the Supreme Court held error, and that is the only proposition upon which the decision of our court was disapproved.

The situation presented here, however, is entirely different from that present in the Conrades case, upon which the decision in that case by the Supreme Court turned. We have italicized those parts of the preamble

and resolution which we think conclusively demonstrate the difference between the two cases, and the difference in the authorization to that committee and to the one here concerned. Without repeating all of the preamble and resolution, it is here sufficient to refer to a part. The preamble sets out that the Board of Aldermen "is considering the matter of legislating on the subject of a levy and collection of a reasonable annual license tax by the city of St. Louis 'from every person, copartnership, association and corporation engaged in the business of making and vending gas for artificial lighting and heating and distributing the same by means of pipes or conduits laid in the public streets, highways and alleys within the city." We have seen that the power of levying and collecting a reasonable annual license tax by the city of St. Louis is expressly granted by its charter. So here is the power to legislate. With the power to legislate follows the right to investigate through its committee, in order to intelligently legislate. That, the cases cited by Judge GOODE in In re Conrades show.

The committee to be appointed, was authorized, among other things, to investigate the cost of production and manufacture of gas by persons and corporations making and distributing that article in the city of St. Louis, etc., "so that a correct determination may be made by the Board of Aldermen of the cost of the production and manufacture and the cost of distribution of such gas and the cost of such service to the users of same," etc., "in order that an equitable and proper per cent. may be arrived at to be fixed as an annual license tax on such business." Investigation along other but like lines is also authorized to be made by the committee, as will appear by reading the resolution in full, as we have set it out. For the purposes of our decision it is sufficient to refer to the first and main purposes and subjects set out. So it will be seen how widely this differs in its general as well as specific authorization to the committee from the resolution in the Conrades case.

The petitioner here is the president of the Laclede Gas Light Company and beyond all doubt is the person

who, in the first instance, can at least aid the committee in the attainment of the object for which it was appointed. There is no question here presented of the production of books and papers; that is not within the subpoena served upon the petitioner. The examination is of him personally, presumably as an officer of the Laclede Gas Light Company, and it is to be assumed, in the absence of a showing to the contrary, that the questions which will be asked him by the committee, will be within the scope of the committee's authority to investigate and not of such a character as to infringe upon any constitutional right of the petitioner.

It is confessed in the return that the Laclede Gas Light Company is the only corporation within the city of St. Louis exercising within that city the franchise of furnishing gas for lighting, etc., so that it is a class in itself, as the answer practically avers, and that answer disclaims a monopoly, and expressly admits that the Laclede Gas Light Company has none. So it appears beyond question that no other person or corporation, other than the Laclede Gas Light Company, of which the petitioner is the president, is engaged in that business in the city of St Louis. Hence the point made by learned counsel, that the city cannot levy a license tax on the Laclede Gas Light Company alone, which is not levied on other manufacturers and merchants, falls to the ground. There is no other company, manufacturer or merchant in the city of St. Louis engaged in the business of furnishing gas for lighting and heating than the Laclede Gas Light Company. Our Constitution provides that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. [Article 10, section 3, Constitution.]

Our Supreme Court, in City of St. Louis v. United Railways Co., 263 Mo. 387, 174 S. W. 78, has distinctly held that a different and distinct license tax may be imposed upon any one class of business.

Two cases are referred to by learned counsel for petitioner in support of their proposition that the city cannot levy a license tax on the Laclede Gas Light Com-

pany alone, which is not levied on other manufacturers and merchants, namely, City of Kansas City v. Grush, 151 Mo. 128, 52 S. W. 286, and State ex rel. Wyatt v. Ashbrook, 154 Mo. 375, 55 S. W. 627. These cases afford no support whatever for this contention. There the parties concerned applying for a license or prosecuted for carrying on business without a license, were single individuals within a class, and because the ordinances referred to attempted to make a distinction among members of the same class, the ordinances were held void. That is far from being this case.

In short, we hold that this investigation was entirely within the power of the Board of Aldermen in the first place and within their power to commit the investigation to a committee, and that full power was conferred upon the committee. The investigation was for a lawful purpose, for the purpose of securing information on which the Board of Aldermen, representing the legislative power of the city, could act with intelligence and with a knowledge of all the facts.

The statement that the Board of Aldermen has in its possession, in the form of documents, the information now sought to be elicited through its committee, is not pertinent. It may be that such documents do not satisfactorily cover the matters on which information is sought; or, the Board may desire to test the statements in such documents through witnesses or otherwise.

It is argued that if petitioner can be called before the committee, every citizen engaged in purely private business may be subjected to like proceedings. This proposed inquiry is not aimed at the conduct of a private business. If it was, it might fall within part of what is held in the Dunn case, supra. Furthermore, that argument goes too far; for if petitioner, as president of a public service corporation, cannot be called on to testify concerning its dealings with the public, then no one in like circumstances can be called and the door is closed to the Board in its efforts to legislate intelligently on many public matters.

The fact that the Laclede Gas Light Company is now paying a license tax is immaterial; it is in the power of the Municipal Assembly to increase or diminish that.

Nor is it true that the proposed license tax, if one is imposed, violates any provisions of the Constitution of the State, requiring uniformity of taxation, or is double taxation. We think these propositions are answered by the decision of our Supreme Court in the case of City of St. Louis v. United Railways Co., supra, l. c. 441 and 445, and by that of the Supreme Court of. the United States in City of St. Louis v. United Railways Co., 210 U. S. 266.

It goes without saying that the power of the Board of Aldermen and of its committee is not to be exercised arbitrarily, capriciously or oppressively, nor without due regard to rights guaranteed by our Constitution. It is to be assumed that when the petitioner appears before the committee of the Board of Aldermen to give testimony in the matter referred to the committee by that Board, that that committee will confine itself in its line of examination to matters within its jurisdiction. We are here without any information of the questions to be asked petitioner, nor even of the precise line of inquiry the committee may pursue as to him.

It is argued that the matters to be inquired of are exclusively within the power of the Board of Public Utilities of the city of St. Louis, and of the Public Service Commission of the State.

The Board of Public Utilities (see article XIII, section 10, of the City Charter), while given general supervision over the maintenance, etc., and assessment of rates and charges of all public utilities, has no power to fix or enforce a license tax and is directly ordered to "cause to be executed all ordinances regulating the construction . . . maintenance . . . or rates of public utilities operating under franchises, licenses or permits, or compelling extensions of facilities for such service." Here it distinctly appears that this Board of Public Service is to operate under ordinances and no

power to fix licenses is vested in that Board.    All that is with the Board of Aldermen.

We look in vain for any authority lodged in the Public Service Commission, created by Act of March 17, 1913 (Laws 1913, p. 556) to fix the license tax to be imposed on any public service corporation.   Article IV of that Act (page 602, sections 67 to 85), which contains the provisions as to gas companies and the like, certainly confers no such power, and while by those sections visitorial powers, as we may call them, are lodged in that body, we find nothing to hold them exclusive of the right of the city to make like inquiry when necessary for the purpose of carrying out its lawful objects and powers to regulate license laws by ordinance.   Nor is there any intimation given by our Supreme Court in State ex rel. Missouri Southern R. R. Co. v. Public Service Commission, 259 Mo. 704, 168 S. W. 1156, of any power in that commission to exercise legislative or judicial powers, the Supreme Court, on the contrary, there holding that it had no such powers.   It may fix rates, but has nothing to do with the taxation of public service corporations, nor power to license them to do business.

We have set out the charter provisions and so much of the ordinance as is germane to the matter, probably with unnecessary particularity, but we do so because, in our judgment, a reading of them shows ample authority in the Board of Aldermen, though its committee, to conduct the proposed investigation.   It may be that no ordinance will ever be passed imposing the license tax upon the Laclede Gas Light Company, or if it is now paying one or a like tax, that it will be increased; it may even be decreased.   Whether the ordinance then passed is valid or invalid, is not a question that we can now determine.   The power of the court only extends to determine the validity of an ordinance, after it has been enacted.   [Pitman v. Drabelle, 267 Mo. 78, 183 S. W. 1055.]

As before remarked we do not consider it necessary to follow learned counsel for petitioner through all the

197 M. A.—7

lines of their contention as to why this petitioner should not appear and present himself as a witness under the subpoena served upon him. We have noticed a few of them in particular. As to the others urged, on consideration of them, we do not think that they show any valid grounds for the discharge of the petitioner, nor why the inquiry proposed to be entered upon by the Board of Aldermen through its committee should be halted.

While we have particularly commented on only one of the lines of inquiry covered by the resolution, we are not holding that others there designated are not proper subjects of inquiry.

The refusal of petitioner to appear as a witness before the committee, although he has been duly subpoenaed, is without valid excuse.        •

It follows from these views that the writ of *habeas corpus* heretofore issued must be quashed and the petitioner remanded to the custody of the sergeant-at-arms of the Board of Aldermen of the city of St. Louis, to be by him produced before the committee of that Board, as a witness, there to remain and abide the lawful orders of that committee or of the Board of Aldermen. It is so ordered. *Allen* and *Becker, JJ.,* concur.